EXHIBIT "A"

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** BAYVIEW LOAN SERVICING, LLC, a
*(AVISO AL DEMANDADO):* business entity form unknown,
AZTEC FORECLOSURE CORPORATION, a business entity form
unknown, and DOES 1-100, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NORTH COUNTY CIVIL
FILED
2013 MAY -9  AM 11: 43

CL...

**YOU ARE BEING SUED BY PLAINTIFF:** LEE J. WARE and IRMA
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* WARE

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Diego County Superior Court
North County Regional Center
325 South Melrose Dr.
Vista, CA 92081

CASE NUMBER:
*(Número del Caso):*
37-2013-00047856-CU-OR-NC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph R. Manning, Jr.,    SBN 223381
Law Offices of Joseph R. Manning, Jr., APC          949-200-8755          866-843-8308
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660

DATE: MAY -9 2013
*(Fecha)*
Clerk, by _____ C.Terriquez , Deputy
*(Secretario)*                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   **THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
2  **A PROFESSIONAL CORPORATION**
   4667 MacArthur Blvd., Suite 150
3  Newport Beach, CA 92660
   (949) 200-8755
4  (866) 843-8308

5  Attorneys for PLAINTIFFS LEE J. WARE and IRMA WARE

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9   IN AND FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY REGIONAL CENTER

10

11  LEE J. WARE and IRMA WARE,          Case No.:    37-2013-00047856-CU-OR-NC

12           Plaintiffs,                **COMPLAINT FOR DAMAGES AND EQUITABLE**
                                        **RELIEF:**
            v.
13                                      1. **VIOLATIONS OF CAL. CIVIL CODE**
    BAYVIEW LOAN SERVICING,                **§2923.6**
14  LLC, a business entity form unknown,  2. **VIOLATIONS OF CALIFORNIA BUSINESS**
    AZTEC FORECLOSURE                       **& PROFESSIONS CODE §17200**
15  CORPORATION, a business entity      3. **NEGLIGENCE**
    form unknown, and DOES 1-100,       4. **DEMAND FOR ACCOUNTING**
16  inclusive,
                                        **DEMAND FOR JURY TRIAL**
17           Defendants.

18

19

20       TO BAYVIEW LOAN SERVICING, LLC and AZTEC FORECLOSURE

21  CORPORATION, and to their Attorneys of record:

22       Plaintiffs, LEE J. WARE and IRMA WARE (hereinafter collectively referred to as

23  "Plaintiffs"), by their attorney, for causes of action against Defendants BAYVIEW LOAN

24  SERVICING, LLC, a business entity of unknown form, AZTEC FORECLOSURE

25  CORPORATION, a business entity of unknown form, and DOES 1 through 100, inclusive

26  (hereinafter collectively referred to as "Defendants"), allege the following on information and

27  belief:

28

_JOSEPH R. MANNING, JR., ESQ._
_4667 MACARTHUR BLVD., STE. 150_
_NEWPORT BEACH, CA 92660_

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
1

FILED
NORTH COUNTY DIVISION
2013 MAY -9  AM 11: 43
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

## I.

## INTRODUCTION

1. Plaintiffs own the subject property located at **8248 Rockview Drive, El Cajon, CA 92021** (the "Subject Property").

2. Plaintiffs bring this action against Defendants and DOES 1 to 100 based on the following:

   a. Defendants' violations of California Civil Code §2923.6;

   b. Defendants' violations of California Business & Professions Code §17200 by engaging in unlawful, unfair and/or fraudulent business practices as part and parcel to unsafe and unsound banking procedures;

   c. Defendants' negligence in assessing Plaintiffs' loan for any and all foreclosure prevention alternatives, including a loan modification; and

   d. Unlawful billing practices.

## II.

## PARTIES

3. At all times mentioned herein, Plaintiffs LEE J. WARE and IRMA WARE are individuals who reside in the County of San Diego, State of California.

4. Upon information and belief, Defendant BAYVIEW LOAN SERVICING, LLC ("Bayview"), is a business organization of unknown form doing business in the State of California.

5. Upon information and belief, Defendant AZTEC FORECLOSURE CORPORATION ("Aztec"), is a business organization of unknown form doing business in the State of California.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

2

7. Plaintiffs are informed and believe, and based on such information and belief, allege that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

8. Plaintiffs are informed and believe, and on such information and belief, allege that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiffs' damages were proximately caused by Defendants. Plaintiffs will seek leave of Court to amend this Complaint to set forth the appropriate charging allegations along with the true names and capacities of said Defendants when they have been ascertained.

9. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

## III.

## JURISDICTION AND VENUE

10. Venue and jurisdiction are proper in this Court because injury and damages to Plaintiffs occurred in this jurisdictional area, and the Subject Property is located in this jurisdictional area.

11. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

12. This Court has personal jurisdiction over Defendants because each Defendant resides in, is

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. CCP §410.10.

13. This Court is the appropriate venue for this action under Cal. Code of Civil Proc. §395 & §395.5 because the acts that give rise to the causes of action alleged herein occurred in the County of San Diego, State of California, and the Subject Property is located in this county. Plaintiffs hereby designate the County of San Diego, State of California, as the place of proper venue.

## IV.

## DEMAND FOR JURY TRIAL

14. Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

## V.

## BACKGROUND OF THE HOME AFFORDABLE MODIFICATION PROGRAM

15. **Creation of the Program:** Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively, the "Act"). *12 U.S.C.A. §5201 et seq. (2009).*

16. The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner which "protects home values" and "preserves homeownership." *12 U.S.C.A. §5201.*

17. The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program ("TARP"). *12 U.S.C. §5211.*

18. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.

19. Congress allocated up to Seven Hundred Billion Dollars ($700,000,000,000.00) to the United

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

4

States Department of Treasury for TARP. *12. U.S.C.A §5225.*

20. The Act grants authority to the Secretary to administer TARP, stating that the Secretary "shall" take into consideration the "need to help families keep their homes and stabilize communities." *12 U.S.C §5213(3).*

21. The Act mandates the Secretary, for any acquired assets that are backed by residential real estate, to "implement a plan that seeks to maximize assistance for homeowners," as well as the use of the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." Specifically, the Act authorizes the Security to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." *12 U.S.C.A §5219.*

22. The Act also imposes parallel mandates to implement plans to maximize assistance to homeowners and to minimize foreclosures on the Federal Housing Finance Agency, Federal National Mortgage Associate ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Reserve Board, in their roles as "federal property managers." *12 U.S.C.A §5220.*

23. On February 18, 2009, pursuant to the authority granted under the Act, the Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable Program (the "MHA Program").

24. The MHA Program consists of two (2) subprograms: (1) the Home Affordable Refinance Program ("HARP"), designed to assist homeowners with minimal or negative equity in their home by refinancing their mortgages, and (2) the Home Affordable Modification Program ("HAMP"), created to implement the uniform loan modification protocol. It is this subprogram that is at issue in this case.

25. HAMP is funded by the federal government, primarily with TARP funds. The Treasury Dept.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

has allotted at least Seventy-Five Billion Dollars ($75,000,000,000.00) to HAMP, of which at least Fifty Billion Dollars ($50,000,000,000.00) is TARP money.

26. Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to the existing mortgage obligations in order to make the monthly payments more affordable. Servicers receive one thousand dollars ($1,000.00) for each HAMP modification.

27. **Defendant Bayview's Obligations Under HAMP:** Industry entities that perform the actual interface with borrowers, including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure, are known as "servicers." Servicers typically act as the agent of the entities that hold mortgage loans.

28. If a servicer elects to participate in HAMP, the servicer executes a Servicer Participation Agreement (an "SPA") with the federal government.

29. The SPA incorporates all "guidelines," "procedures," and supplemental documentation instructions, bulletins, frequently asked questions, letters, Fannie Mae or Freddie Mac, in connection with the duties of the participating servicers (collectively, these documents are known as the "Program Documents").

30. As defined in the SPA, a participating servicer is required to "perform" the activities described in the program documents "for all mortgage loans it services."

31. HAMP and the SPA are manifestly intended to benefit defaulting borrowers. This is the reason for the program's existence. Supplemental Directive 09-01, incorporated into the SPA, states:

> On February 18, 2009, President Obama announced the Home Affordability and Stability plan to help up to 7 to 9 million families restructure or refinance their mortgages to avoid foreclosure. As a part of this plan, Treasury Department (Treasury) announced a *national modification program aimed at helping 3 to 4 million at risk homeowners*- both those who are in default and those who are at imminent risk of default—by reducing monthly payments to sustainable levels. *Supp. Directive 09-01 at 1 (emphasis added).*

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

32. Similarly, the MHA website introduces HAMP as a plan to "help....Americans reduce their monthly mortgage payments to more affordable levels by 'preventing avoidable foreclosure.'"

33. The Program Documents require participating servicers to evaluate all loans that are sixty (60) or more days delinquent for HAMP modifications. In addition, if a borrower contacts a participating servicer regarding a HAMP modification, the participating servicer must collect the borrower's income and hardship information to determine if HAMP is appropriate.

34. HAMP modifications consist of two (2) stages: (1) a Participating Servicer is required to gather information and, if appropriate, offer the homeowner a Trial Period Plan ("TPP"). The TPP initiates a three (3) month period during which the homeowner is to make the modified mortgage payments. If the homeowner successfully completes the TPP, the homeowner moves to stage (2), and the Participating Servicer offers the homeowner a permanent mortgage modification.

35. HAMP Supplemental Directive 10-02 expressly states that the lender must proactively solicit all borrowers whose first mortgage loans are potentially eligible for HAMP and who have two (2) or more payments due and unpaid.

36. In addition, Supplemental Directive 10-02 contains a prohibition against referral to foreclosure until either: (a) a borrower has been evaluated and determined to be ineligible for HAMP; or (b) reasonable solicitation efforts have failed.

37. Furthermore, Supplemental Directive 10-02 explicitly requires participating servicers to consider borrowers in active bankruptcy for HAMP if a request is received from the borrower, borrower's counsel, or bankruptcy trustee.

38. In order to qualify for a HAMP modification, **the original loan amount cannot exceed $729,750.00, and the subject property must be owner-occupied.** As alleged herein, the original amount of Plaintiffs' loan was $330,000 which is well within the HAMP limit.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

7

## VI.

**THE CALIFORNIA HOMEOWNER'S BILL OF RIGHTS: Effective on January 1, 2013**

39. Plaintiffs sue under several causes of action, among them, a new statute in the California Homeowner's Bill of Rights, effective on January 1, 2013: Civil Code §2923.6 (Defendants' evaluation of Plaintiffs for any and all foreclosure prevention alternatives, and obligatory additional evaluation based on a material change in Plaintiffs' financial circumstances).

40. California's housing crisis has had a devastating economic impact on the state and local governments. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services.

41. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. The foreclosure crisis continues in California, and there remain more than two million "underwater" mortgages in California.

42. **Legislative Intent.** The legislature found and declared that it is essential to the economic health of California to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by **modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options.** These changes to California's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1    on families, communities, and the state and local economy.

2    43. As a result, in February 2012, Attorney General Harris announced the California "Homeowner

3        Bill of Rights," designed to protect homeowners from unfair practices by banks and mortgage

4        companies and to help consumers and communities cope with the state's urgent mortgage and

5        foreclosure crisis. Attorney General Harris claims that "this legislation will make the mortgage

6        and foreclosure process more fair and transparent, which will benefit homeowners, their

7        community, and the housing market as a whole."

8

9    44. On July 11, 2012, California Governor Jerry Brown signed into law the Homeowner's Bill of

10       Rights (also known as "AB 278" or "SB 900"), marking California as the first U.S. state to

11       adopt into law the residential mortgage foreclosure reform principles outlined in the February

12       2012 National Mortgage Settlement with the nation's top five mortgage services. The

13       Homeowner's Bill of Rights makes changes to nonjudicial foreclosure protocols for first lien

14       residential mortgage loans.

15

16   45. The Homeowner's Bill of Rights provides protections for borrowers and struggling homeowners

17       by prohibiting a series of inherently unfair bank practices that have needlessly forced thousands

18       of homeowners into foreclosure. Essentially, this law ensures that qualified first mortgage

19       borrowers are afforded the right to explore any available alternative to foreclosure with their

20       mortgage servicer before a California nonjudicial foreclosure can commence and/or be

21       completed through foreclosure sale.

22

23   46. The Homeowner's Bill of Rights offers borrowers the following protections:

24       a.  **Burden of Compliance on the "Mortgage Servicer:"** the burden of compliance is

25           placed on the "mortgage servicer," the person servicing the loan or is responsible for

26           interacting a borrower, either as the current owner of the note or as the owner's agent;

27       b.  **Foreclosure Prevention Alternative:** "foreclosure prevention alternative" is broadly

28           defined as any available loss mitigation option, including first lien loan modification;

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

9

c.  **Disclosure:** mortgage servicers must include a disclosure in the borrower's pre-Notice of Default outreach package that includes (i) a statement that the borrower may be entitled to certain protections, and (ii) a statement informing the borrower of his/her right to request a copy of his/her note and deed of trust, any assignment of the deed of trust required to demonstrate the mortgage servicer's right to foreclosure, and the borrower's payment history since he/she was last less than sixty (60) days past due;

d.  **Notice of Default and Declaration of Compliance:** a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent MAY NOT record a Notice of Default until a disclosure (as described above) is sent to the borrower, AND thirty (30) days after either (i) Initial contact is made, to assess the borrower's financial situation and explore options for foreclosure avoidance, OR (ii) The due diligence requirements for locating the borrower have been met with no borrower response. In addition, a declaration of compliance must be attached to the Notice of Default;

e.  **Restriction on dual track foreclosure:** mortgage servicers are restricted from advancing the foreclosure process while a borrower is seeking a loan modification. When a borrower completes an application for a loan modification, the foreclosure process is essentially on-hold until the complete application has been reviewed;

f.  **Guaranteed Single Point of Contact:** borrowers are guaranteed and provided one or more direct means of communication with their single point of contact, as they navigate the system and try to keep their homes- a person or team at the bank who knows the facts of their case, has their paperwork and can get the borrowers a decision about their application for a loan modification;

g.  **Restriction on "Robo-Signing:"** the recording of "robodocs," or "robo-signing," the process through which banks approved fraudulently signed mortgage documents in the foreclosure process, is PROHIBITED. All mortgage documents, including notices of default and supporting declarations, notices of sale, assignments of deed of trust, and substitutions of trustee recorded in connection with a nonjudicial foreclosure, as well as declarations filed in court with respect to any foreclosure proceeding, must be accurate, complete and supported by competent and relevant evidence;

h.  **Restriction on Charges and Fees:** mortgage servicers may not charge any application, processing, or other fee for any first lien loan foreclosure prevention alternative, and while a foreclosure prevention alternative is being considered or denial

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

is being appealed, a mortgage servicer cannot collect late fees;

   i.   **Private right of action:** borrowers are afforded the following private right of action:

       i.   Up until a foreclosure sale is completed, borrowers may seek a court injunction for a material violation of these protections, and may seek attorney's fees.

      ii.   After a foreclosure sale is completed, borrowers can seek court recovery for actual damages suffered as a result of a material violation, that was not corrected prior to the foreclosure sale, plus attorney's fees, and, upon a court's finding of willful, reckless, and/or intentional material violations committed, borrowers can be awarded the greater of $50,000 civil money penalty or treble damages.

47. According to the Legislature, the new Bill of Rights brings basic fairness, accountability, and transparency to the state's mortgage and foreclosure process, and it is necessary to provide stability to California's statewide and regional economies and housing market.

48. This new law takes effect January 1, 2013 through January 1, 2018, when alternate provisions become effective on and after that date. A true and correct copy of the relevant Civil Code sections under the Bill of Rights are attached and incorporated hereto as **Exhibit A.**

## VII.

## FACTUAL BACKGROUND

### Defendants' Marked-Up and Unnecessary Fees for Default-Related Services

49. Plaintiffs allege, upon information and belief, that in Defendants' loan servicing operations, Defendants follow a strategy to generate fraudulently concealed default-related fee income. Rather than simply obtaining default-related services directly from independent third-party venders, and charging borrowers for the actual cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

50. Upon information and belief, Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the

services from third-party vendors. The third-party vendors charge Defendants for their services. Defendants, in turn, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has collapsed, and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

51. The mortgage contract between a lender and a borrower consists of two (2) documents: the Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan services, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

52. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

53. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it *does not authorize* the servicer to mark-up the actual cost of those services to make a profit.

54. As discussed above, by charging marked-up fees, Defendants violate their agreements with borrowers because, among other things, charges that exceed the actual cost of the services

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

12

provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

55. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

56. Plaintiffs are informed and believe, and on that basis, allege that Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiffs', by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" on borrowers' statements.

57. Plaintiffs are informed and believe, and on that basis, allege that under the "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements, Defendants also assess unnecessary and unreasonable fees for property inspections. Although such inspections purportedly are conducted to guard against property loss, Defendants' practices are designed to ensure that these fees are charged to as many accounts as possible, even if the inspections are inappropriate, unnecessary, or unreasonable.

58. Plaintiffs are informed and believe, and on that basis, allege that even if the property inspections were properly performed and actually reviewed by someone at the bank, Defendants' continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Defendants to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring.

59. As a result of Defendants' concealment of these unlawful fees, thousands of unsuspecting borrowers, including Plaintiffs, are cheated out of millions of dollars.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

## Plaintiffs' Injuries as a Result of Defendants' Practices

60. Plaintiffs allege, upon information and belief, that the assessment of these marked-up fees can make it impossible for borrowers to become current on their loan. Charges for default-related services can add hundreds or thousands of dollars to borrowers' loans over time, driving them further into default.

61. When borrowers, including Plaintiffs, get behind on their mortgage, and fees for these default-related services are added on to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers, including Plaintiffs to ever bring their loan current. Even if borrowers pay the delinquent principal and interest payments, the marked-up fees for default-related services ensure that borrowers stay in default. After paying delinquent principal and interest, although the next payment comes in on time, often through automatic payment deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so there is not enough to cover the entire monthly payment. This makes the payment late, creating a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time borrowers, including Plaintiffs, are aware, Defendants are threatening to foreclose unless a huge payment is made, and the weight of these unnecessary fees drops borrowers into a financial abyss.

62. As a result of Defendants' practices, borrowers, including Plaintiffs, are forced to move deeper into default, and suffer damage to their credit score. Defendants provide information about borrowers' payment history to credit reporting companies, including whether they have been late with a payment or missed any payments. By keeping borrowers, including Plaintiffs, in default with these practices, Defendants affect whether borrowers, including Plaintiffs, can get a loan in the future, and what borrowers' interest rate will be on such loans.

63. Additionally, as a result of Defendants' practices, borrowers, including Plaintiffs, are

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

wrongfully driven into foreclosure.

## Plaintiffs' Financial Struggle and Subsequent Attempts to Modify the Loan

64. The Subject Property is Plaintiffs' principal residence and is owner-occupied.

65. In 2007, Plaintiffs entered into a written loan agreement and obtained a mortgage loan, in the amount of $330,000 (the "Loan"), secured by the Subject Property, through a Deed of Trust (recorded November 15, 2007), then and now the principal residence of Plaintiffs.

66. Unbeknownst to Plaintiffs, in the process of refinancing their home, Plaintiffs were put into a negative amortization loan that Plaintiffs could not afford. Plaintiffs' loan broker misrepresented and misinformed Plaintiffs of the terms of the monthly payments, and as the payments continued to increase over time and deferred interest piled on to the Loan balance, Plaintiffs knew they would not be able to keep up with monthly payments for very long.

67. Soon thereafter, Plaintiff Lee Ware's business suffered a significant financial setback, due to the poor economy, and as a result, Plaintiffs' income had significantly decreased. At that point, Plaintiffs had no choice but to use the money in their savings and investments accounts to remain current on the Loan.

68. Over the next year or so, Plaintiffs continued to make mortgage payments under the Loan, sometimes falling behind on one (1) or two (2) months, until late 2010, when Plaintiffs exhausted through their savings and were forced to stop making the monthly payments.

69. In an effort to prevent foreclosure proceedings, Plaintiffs contacted their lender at the time, Virtual Bank, a Division of Lydian Private Bank, to inquire about a loan modification option.

70. Virtual Bank, through its representative, informed Plaintiffs that they "qualified" for a loan modification, and promised Plaintiffs that if they submitted a loan modification application, then no foreclosure activity would take place while their application was in review. This representation led Plaintiffs to believe that they would qualify for a loan modification, that they would secure a

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE.150
NEWPORT BEACH, CA 92660

new affordable monthly mortgage payment, and that they would retain the Subject Property.

71. Immediately thereafter, Plaintiffs applied for a loan modification and submitted a complete application, along with all necessary paperwork, directly to Virtual Bank, via facsimile.

72. Over the next few months, Plaintiffs consistently received letters from Virtual Bank requesting financial documents, and as requested, Plaintiffs continued to submit and resubmit updated financial documents and followed-up weekly with Virtual Bank.

73. However, on or around April 4, 2011, while Plaintiffs were "in review" and submitting financial documents as requested by Virtual Bank, Defendants executed a Notice of Default and Election to Sell Under Deed of Trust (the "NOD" or "Notice of Default") on the Subject Property. Attached as **Exhibit B** is a true and correct copy of the NOD, recorded on April 5, 2011.

74. Plaintiffs contacted Virtual Bank, and its representative advised Plaintiffs that the NOD would be held in "suspense," and for Plaintiffs to continue submitting their updated financial documents and to continue working with Virtual Bank during the loan modification process because a loan modification was imminent. Plaintiffs justifiably relied on Virtual Bank's representations and continued the loan modification process.

75. However, as Plaintiffs' financial situation continued to worsen and Plaintiffs were desperate to avoid foreclosure, Plaintiffs had no choice but to file for Chapter 13 Bankruptcy in or around July 2011, and a Chapter 13 Plan was confirmed in or around February 2012.

76. In or around October 2012, Sabadell United Bank, N.A., as Receiver for Virtual Bank, a Division of Lydian Private Bank, filed a Motion for Relief from Stay.

77. At that point, Plaintiffs reasonably believed that foreclosure proceedings would commence, and in an effort to avoid foreclosure, Plaintiffs decided to pursue a short sale. In or around November 2012, Plaintiffs' realtor drafted a full Residential Listing Agreement ("Agreement"), in which Plaintiffs were to short sell the Subject Property to Pacific Sotheby's International Realty. All the

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

parties to the transaction signed the Agreement on or around November 13, 2012. Attached as **Exhibit C** is a true and correct copy of the Agreement.

78. On or around February 12, 2013, the Motion for Relief from Stay was granted and the Court Order was filed and mailed to Plaintiffs.

79. On or around March 11, 2013, Defendants executed and recorded a Notice of Trustee's Sale (the "NTS" or "Notice of Sale"), against the Subject Property. Attached as **Exhibit D** is a true and correct copy of the NTS.

80. Immediately thereafter, Plaintiffs contacted Virtual Bank to inquire as to Plaintiffs' loss mitigation options and specifically, a loan modification; however, Virtual Bank was not willing to help Plaintiffs modify their loan, but its representative advised Plaintiffs that with their Residential Listing Agreement already done and signed by all parties, Plaintiffs' qualified for a short sale and that a short sale was Plaintiffs' best option.

81. Plaintiffs justifiably relied on Virtual Bank's representations and submitted an application for a short sale to Virtual Bank, via facsimile, on or around March 18, 2013.

82. On or around April 3, 2013, Plaintiffs received a letter, informing them that Defendant Bayview Loan Servicing, LLC, acting as agent on behalf of Virtual Bank, had received Plaintiffs' request to be offered a foreclosure alternative. The letter further stated that within five (5) days, Bayview would review the documentation Plaintiffs provided and it would contact Plaintiffs, and it would take approximately thirty (30) days to make a decision regarding Plaintiffs' request.

83. However, on or around April 9, 2013, Plaintiffs received a letter from Defendant Bayview, informing Plaintiffs that the review was complete and that Plaintiffs are ineligible for Bayview's programs because it serviced Plaintiffs' loan on behalf of an investor or group of investors that had not approved a Shortsale of the Loan. However, no further explanation was given. Attached as **Exhibit E** is a true and correct copy of the denial letter.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

84. The letter did not include the specific reasons for the investor disallowance or a description of other foreclosure prevention alternatives for which Plaintiffs may have been eligible AND a list of steps Plaintiffs needed to take in order to be considered for those options. These are clear violations of the Homeowner's Bill of Rights, specifically Civil Code §2923.6(f).

85. Thereafter, on or around April 15, 2013, Plaintiffs received a Notice of Postponement of Foreclosure Sale from Defendant Aztec Foreclosure Corporation, advising Plaintiffs that the foreclosure sale had been postponed to May 14, 2013. Attached as **Exhibit F** is a true and correct copy of the Notice.

86. Plaintiffs attempted to contact Defendants Bayview and Aztec Foreclosure several times to get an explanation regarding their short sale denial and what other options Plaintiffs had to prevent foreclosure, as their financial circumstances had changed. However, they were unable to speak to the same representative on the telephone more than once, and ultimately they were unable to speak to anyone who knew anything about Plaintiffs' file and who was willing to help them or provide them with insightful information.

87. At this time, Plaintiffs have been unable to negotiate a mortgage payment that they can afford and Plaintiffs have been unable to cure the default because of the substantial arrearages, which include unnecessary fees added to the loan balance.

88. Plaintiffs are in possession of the Subject Property and no Trustee's sale has occurred; however, a Trustee's sale is currently scheduled for **May 14, 2013. As a result, the instant action became necessary.**

89. As set forth herein, Plaintiffs' financial circumstances have materially changed as their income and expenses have changed since the last time Plaintiffs submitted a complete application for foreclosure prevention alternatives, to Defendant Bayview. Specifically, Plaintiffs' overall expenses have increased, as their cost of living has increased (including, but not limited to, food,

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

gasoline, auto insurance, and utilities expenses), and Plaintiff Lee Ware's self-owned business expenses have increased. As a result, Plaintiffs' disposable household income has decreased, as more money is being allocated to cover their expenses, and Plaintiffs are unable to afford the current monthly mortgage payments.

90. In addition, on May 8, 2013, Plaintiffs' attorney documented and submitted these changes to Defendants Bayview Loan Servicing, LLC and Aztec Foreclosure Corporation, via facsimile. A true and correct copy of the letter to Defendants informing them of Plaintiffs' material financial changes, along with fax confirmation sheets, is attached and incorporated hereto as **Exhibit G.**

91. Accordingly, pursuant to Civil Code §2923.6, under the California Homeowner's Bill of Rights, Defendant Bayview is obligated to evaluate Plaintiffs' application for any and all available foreclosure prevention alternatives, including a loan modification and a short sale, based on the material change in their financial circumstances, and **Defendants must cancel the foreclosure sale and CEASE all foreclosure activity** on the Subject Property.

92. Plaintiffs' claims are simple: when large financial institutions promise to modify eligible loans to prevent foreclosures and taxpaying homeowners live up to their end of the bargain, homeowners expect that promise to be kept, especially when those large financial institutions are acting under the guidance of a federal program specifically targeted at preventing foreclosures.

93. Unbeknownst to Plaintiffs, Defendants, acting as lenders, mortgage servicers, trustees, and/or beneficiaries, received, and continue to receive, a financial incentive on each loan modification application a borrower submits. Because of this type of incentive, Defendants benefit from allowing Plaintiffs' modification request to become stale and advising Plaintiffs to re-apply for a modification, rather than actually reviewing Plaintiffs' application.

94. Defendants wrongfully delayed Plaintiffs' modification request due to their own ineffective and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

unreasonably slow processing system and the financial incentives they received by asking Plaintiffs to submit numerous applications.

95. The foregoing acts and material omissions of the Defendants herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice and disclosure rights.

96. Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

97. Defendants are corporate employers. As such, their officers, directors, and/or managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

98. Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to take the Subject Property without due process of law.

99. Plaintiffs are ready, willing, and able to enter into a foreclosure prevention program that is affordable for Plaintiffs and more profitable to Defendants than a foreclosure, and Plaintiffs are ready, willing, and able to make such payments at the times required of them by law.

## VIII.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF CAL. CIV. CODE §2923.6

## (AS TO ALL DEFENDANTS)

100. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

101. As of January 1, 2013, the new California Homeowner's Bill of Rights, specifically Civil Code §2923.6, applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. In this case, the Subject Property contains no more than four (4) dwelling units and is the principal residence of Plaintiffs, as indicated in their loan documents.

102. Civil Code §2923.6(f) states that following the denial of the borrowers' complete application, the mortgage servicer is obligated to send a written notice to the borrowers identifying the reasons for denial, including the following:

    a. The amount of time from the date of the denial letter in which the borrowers may request an appeal and instructions regarding how to appeal the denial;

    b. **If the denial was based on investor disallowance, the specific reasons for the investor disallowance;**

    c. If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the NPV and a statement that the borrowers may, upon written request to the servicer, obtain ALL of the inputs used in the NPV calculation;

    d. If applicable, a finding that the borrowers were previously offered a loan modification and failed to successfully make payments under the terms of the modified loan; and

    e. **If applicable, a description of other foreclosure alternatives for which the borrowers may be eligible AND a list of the steps the borrowers must take in order to be considered for those options.**

103. In this case, Bayview's April 9, 2013 denial letter sent to Plaintiffs failed to meet the above requirements. The denial letter, which states that the investor or group of investors did not approve a Shortsale of Plaintiffs' loan, **does not include:** the specific reasons for the investor disallowance, as required, and a description of other foreclosure prevention alternatives for

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
21

which Plaintiffs may be eligible and a list of the steps Plaintiffs must take in order to be considered for those options (Exhibit E).

104. Moreover, when Plaintiffs attempted to contact Defendant Bayview to get an explanation regarding the short sale denial and what other options Plaintiffs had to prevent foreclosure, as their financial circumstances had changed, Plaintiffs were unable to speak to anyone who knew anything about Plaintiffs' file and who was willing to help them or provide them with insightful information. **These are clear violations of Civil Code §2923.6(f).**

105. Furthermore, pursuant to Civil Code §2923.6(g), the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, **unless there has been a material change in the borrower's financial circumstances** since the date of the borrower's previous application AND that change is documented by the borrower and submitted to the mortgage servicer (Exhibit A, page 12).

106. As set forth herein, Plaintiffs' financial circumstances have materially changed as their income and expenses have changed since the last time Plaintiffs submitted a complete application for foreclosure prevention alternatives, to Defendant Bayview. Specifically, Plaintiffs' overall expenses have increased, as their cost of living has increased (including, but not limited to, food, gasoline, auto insurance, and utilities expenses), and Plaintiff Lee Ware's self-owned business expenses have increased. As a result, Plaintiffs' disposable household income has decreased, as more money is being allocated to cover their expenses, and Plaintiffs are unable to afford the current monthly mortgage payments.

107. In addition, pursuant to the requirements of Civil Code §2923.6, Plaintiffs' attorney documented and submitted these financial changes to Defendants Bayview Loan Servicing, LLC and Aztec Foreclosure Corporation, via facsimile, on May 8, 2013 (Exhibit G).

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

108. Accordingly, pursuant to Civil Code §2923.6, Defendant Bayview is obligated to fairly review and evaluate Plaintiffs' application for any and all available foreclosure prevention alternatives, including a loan modification, due to the material change in Plaintiffs' financial circumstances.

109. In addition, Civil Code §2923.6 prohibits **"dual tracking"**—a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent may not record a Notice of Default (NOD) or a Notice of Sale (NOS), and may not conduct a nonjudicial foreclosure sale while a **"complete" first lien loan modification application** is pending. Therefore, Defendants may NOT conduct a nonjudicial foreclosure sale, including scheduling a foreclosure sale date and/or postponing a foreclosure sale date, while Plaintiffs' application is in review.

110. Defendant Bayview was in possession of Plaintiffs' *complete* application and as previously mentioned, Bayview has been notified of Plaintiffs' material financial changes. However, despite these facts, Defendants have not yet agreed to review Plaintiffs' application for foreclosure prevention alternatives, and Defendants have scheduled a Trustee's sale date on the Subject Property, set for May 14, 2013. **These are clear violations of Civil Code §2923.6.**

111. Therefore, pursuant to the Homeowner's Bill of Rights, and specifically Civil Code §2923.6, the **foreclosure sale of Plaintiffs' property must be cancelled and all foreclosure activity must CEASE**, and Defendant Bayview must review Plaintiffs for any and all available foreclosure prevention alternatives, including, but not limited to, a loan modification.

112. The intent of the California legislators in enacting the Homeowner's Bill of Rights was to address the consequences of the subprime mortgage crisis leading to declining real property values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective of the Bill of Rights was to make sure lenders, loan servicers, and their agents were communicating and working with borrowers in default to assess the borrowers' financial situation and discuss foreclosure alternatives before a foreclosure is started by recording a

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

notice of default. <u>The intent of the legislature is clear and the requirements that it has imposed are by no means arbitrary.</u>

113. Defendants' failure to comply with Civil Code §2923.6 directly undermines the intent of the statute. This failure to adhere to the statute renders it essentially meaningless and, if the statue is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless. As a result, Defendants are liable to Plaintiffs for any and all statutory and/or actual damages which have resulted from their conduct.

114. In addition, Plaintiffs have incurred costs associated with the foreclosure action since its commencement, and Plaintiffs have sought, and now seek, to be fairly evaluated for any and all available foreclosure prevention alternatives, pursuant to the new Homeowner's Bill of Rights.

115. As a result of the above-described wrongful acts and omissions, Plaintiffs have been precluded from the rights granted by Civil Code §2923.6.

## IX.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200

## (AS TO ALL DEFENDANTS)

116. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

117. Plaintiffs bring this action against Defendants pursuant to California Business and Professions Code §17200, *et seq.*, referred to as the Unfair Competition Law (the "UCL").

118. California Business and Professions Code §17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described herein, Defendants have engaged in unfair or fraudulent business acts or practices in violation of Bus. and Prof. Code §17200, *et. seq.*

119. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code §17200,

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

*et seq.*, specifically Bus. and Prof. Code §17203, which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Bus. and Prof. Code §17204, which provides for actions for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public.

120. At all times relevant to this Complaint, Defendants were lenders in the business of providing residential mortgages to the general public and were acting within the scope of that business with regard to the loan provided to Plaintiffs. Defendants have committed acts of unfair competition as proscribed by §17200 including the practices alleged herein against Plaintiffs.

121. Specifically, as fully set forth above, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties and related matters by, among other things:

   a. Violating the terms of the Homeowner's Bill of Rights by "dual-tracking" Plaintiffs, by continuing the foreclosure proceedings on the Subject Property while Plaintiffs' application for foreclosure prevention program was in "review;"

   b. Violating the terms of the Homeowner's Bill of Rights by denying Plaintiffs' request for a short sale, but failing to provide Plaintiffs with the specific reasons for the investor disallowance and a fair opportunity to appeal the denial, and any other foreclosure prevention programs for which Plaintiffs may be eligible and a list of steps for Plaintiffs to take to be considered for those options, all required by §2923.6(f);

   c. Recording a Notice of Default, a Notice of Sale, and conducting a Trustee's sale

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
25

without complying with Civil Code §2923.6(g), by failing to fairly evaluate Plaintiffs' complete application, or afford Plaintiffs a fair opportunity to be evaluated, for available foreclosure prevention alternatives, even after there has been a **material change in Plaintiffs' financial circumstances;**

d. Making misrepresentations and false promises designed to deceive Plaintiffs into thinking they were safe from foreclosure while in review for foreclosure prevention programs;

e. Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

f. Misrepresenting the foreclosure status to Plaintiffs regarding their property;

g. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs' accounts; and

h. Foreclosing on the Subject Property without the legal authority to do so.

122. In addition, Bus. and Prof. Code §17200 also prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with knowledge of its effect, and was done to induce Plaintiffs to pay the marked-up and/or unnecessary fees for default-related services.

123. In the course and conduct of its loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and they failed to disclose the nature of the charges and fees assessed. Defendants concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiffs and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services.

124. Plaintiffs relied on their reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans, and as a result, Plaintiffs relied on Defendants' disclosures about the fees on their

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments, Defendants conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiffs, they would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiffs would have disputed the charges, not paid them.

125. Furthermore, the false promises and false statements of Defendants, and each of them, were designed to unfairly prejudice Plaintiffs and profit from Plaintiffs' loss by dual tracking Plaintiffs toward foreclosure during the purported mortgage assistance review process, in violation of the law.

126. These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions were against public policy, as the legislature enacted the Homeowner's Bill of Rights as an emergency act, to slow the foreclosure process so that foreclosure could be avoided.

127. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts under §17200 in that said acts and practices are likely to deceive the public and affected consumers' legal rights and obligations. Defendants' acts, including, but not limited to, active deception, falsifying documents, failing to deliver material documents, and concealment, may preclude consumers from exercising rights to which they are entitled.

128. Defendants' omissions of material facts, as hereinabove alleged, constitute "unlawful" practice because they violate Title 18 United States Code §1341, §1343, and §1962, California Civil Code §1572, §1573, §1709, §1710, and §1711, and the common law.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

129. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under Bus. and Prof. Code §17200, *et seq.*, in that said acts and practices offend public policy and are substantially injurious to Plaintiffs and all consumers. Said acts and practices have no utility whatsoever; much less sufficient utility to outweigh the substantial harm to Plaintiffs, other consumers, and potential homeowners.

130. Plaintiffs are informed and believe, and based thereon, allege that the illegal acts of Defendants are a serious threat to Plaintiffs because these acts have allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property, to transfer title to or interest in the Subject Property, and to cause the imminent eviction of Plaintiffs from their home. Because of Defendants' illegal actions, Plaintiffs will be forced out of their home. Such eviction will cause Plaintiffs to suffer further immediate and irreparable injury, loss, and damage.

131. As a direct, proximate, and foreseeable result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered substantial ascertainable losses, and therefore, Defendants should be enjoined from continuing such practices, pursuant to Business and Professions Code §17203 & §17204.

132. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct alleged herein, Plaintiffs are at risk of losing the equity in their home or may lose their home through foreclosure by simply doing what they were instructed to do by Defendants.

133. As a direct, proximate, and foreseeable result of the unlawful conduct of Defendants, their business acts or practices have caused injury to Plaintiffs and the general public; and Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business act or practice.

134. In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

constructive trust over, and restitution of, the monies collected and realized by Defendants.

## X.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

### (AS TO ALL DEFENDANTS)

135. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

136. At all times relevant herein, Defendants, acting as Plaintiffs' lender, servicer, trustee, and/or beneficiary of the Note and Deed of Trust, had a reasonable duty to exercise reasonable care and skill to maintain proper and accurate loan records, and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to:

    a. Keeping an accurate accounting of Plaintiffs' mortgage payments, credits, and debits;

    b. Disclosing to Plaintiffs the status of any foreclosure actions taken by Defendants;

    c. Refraining from taking any action against Plaintiffs that they did not have the legal authority to do; and

    d. Providing Plaintiffs with all relevant information regarding the Loan, and following the provisions of the California Homeowner's Bill of Rights.

137. In addition, Defendant Bayview stepped outside its normal role as lender and servicer and assumed additional responsibilities and duties when it undertook efforts to modify loans, including Plaintiffs' loan.

138. Those additional responsibilities include the proper implementation of available foreclosure prevention alternatives, and following the new duties found in the Homeowner's Bill of Rights with its provision against dual track foreclosures, so that Plaintiffs would be properly and fairly evaluated for a suitable foreclosure prevention alternative.

139. When Bayview engaged in the servicing of Plaintiffs' loan, its actions of assuming additional

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

responsibilities in addition to reviewing Plaintiffs for a foreclosure prevention alternative, were intended to affect Plaintiffs and their property because Plaintiffs were in direct contact and negotiation with Bayview, Defendant Bayview's representations were made directly to Plaintiffs, and those representations were likely to, and intended to, affect Plaintiffs' decision making with respect to their property.

140. Plaintiffs allege, on information and belief, that the harm to Plaintiffs was a foreseeable result of Defendant's negligence, given Defendant's numerous verbal promises, and Plaintiffs' justifiable reliance on those promises by foregoing alternative options to avoid foreclosure. Had Plaintiffs known that their home would be foreclosed upon despite being under review for mortgage assistance, and despite Bayview's statements to them that they would receive a suitable program, Plaintiffs could have and would have taken alternative action to prevent foreclosure.

141. Defendants knew, or reasonably should have known, that if they failed to negotiate with Plaintiffs in *good faith*, Plaintiffs would fall deeper into default and Plaintiffs would face foreclosure of their home. In addition, by continuously defaulting on their mortgage payments, Plaintiffs' credit rating would be adversely affected, thereby making it more difficult for Plaintiffs to secure alternative financing to cure the default.

142. In taking the actions alleged above, and in failing to take the actions alleged above, Defendants breached their duty of care and skill to Plaintiffs, in the servicing of Plaintiffs' loan, by, among other things:

    a. "Dual tracking" Plaintiffs toward foreclosure while Plaintiffs' application was being evaluated for a foreclosure prevention program;

    b. Failing to provide Plaintiffs with the specific reasons for the short sale denial and investor disallowance, failing to afford Plaintiffs a fair opportunity to appeal the denial, and failing to advise Plaintiffs of other foreclosure prevention programs for which Plaintiffs was eligible and steps for Plaintiffs to take to be considered for those options, pursuant to Civil Code §2923.6(f);

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

c. Failing to fairly evaluate Plaintiffs' application for any and all alternatives to prevent foreclosure, including, but not limited to, a loan modification, even after a *material change in the borrowers' financial circumstances* has been documented and submitted to the mortgage servicer, pursuant to Civil Code §2923.6(g);

d. Failing to sufficiently train loss mitigation staff and failure to maintain adequate systems for tracking Plaintiffs' documents and information that are relevant to foreclosure and loss mitigation, so that Plaintiffs could receive consistent and accurate information from one phone call to the next, and the like;

e. Failing to notify Plaintiffs that they were foreclosing on Plaintiffs' property, while, in fact, telling Plaintiffs the opposite, ultimately confusing and misleading Plaintiffs; and

f. Foreclosing on the Subject Property without having the legal authority to do so.

143. In regards to the Homeowner's Bill of Rights, Defendants breached their duty of care and skill to Plaintiffs by failing to notify Plaintiffs of their foreclosure prevention alternatives before instituting foreclosure proceedings and by failing to consider Plaintiffs for foreclosure prevention alternatives after being notified of Plaintiffs' material change in financial circumstances. In fact, Defendant Bayview is *obligated* to review borrowers, including Plaintiffs, for foreclosure alternatives if they have had a material change in their financial circumstances. In this case, Defendant Bayview has not so complied.

144. Moreover, Plaintiffs allege, on information and belief, that as a result of Defendants' negligence, Plaintiffs have suffered from (i) substantial arrearages, which include additional and unnecessary interest and fees; (ii) an adverse effect on their credit score; (iii) a loss of the equity in their home; and (iv) being precluded from their rights and protections under the Homeowner's Bill of Rights.

145. Plaintiffs allege, on information and belief, that Plaintiffs' injury was a direct result of Defendant' negligent conduct, as Defendants' misrepresentations of the availability and likelihood/probability of obtaining mortgage assistance was a significant factor in causing

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Plaintiffs' injuries. Had Plaintiffs known that Defendants would ultimately foreclose on their property, they would have sought alternative relief to prevent foreclosure and not relied on Defendants' promises of a loan modification and a short sale.

146. Plaintiffs allege, on information and belief, that Defendants are responsible for Plaintiffs' injury due to the fact that Defendants benefited from prolonging the review period for a foreclosure prevention program, and encouraging Plaintiffs to keep submitting updated financial documents for review. In addition, Plaintiffs were subjected to illegal "dual-tracking," as Defendants knowingly initiated foreclosure even though Plaintiffs' complete application was in review.

147. Plaintiffs allege, on information and belief, that the policy of preventing future harm favors imposing a duty of care on an entity in Defendants' positions. In fact, this is evidenced by the fact that the State of California, through legislation, has enacted the new Homeowner's Bill of Rights, which became effective on January 1, 2013, in an effort to prevent future harm from unnecessary and wrongful foreclosures.

148. Plaintiffs are informed and believe, and on that basis, allege that had Defendants used proper skill and care in the handling of Plaintiffs' matter, Plaintiffs would have had a fair opportunity to avoid foreclosure proceedings, and Plaintiffs would have been able to enter into a foreclosure prevention program that was affordable for Plaintiffs and more profitable to Defendants than a foreclosure.

149. As a direct and proximate result of the negligence and carelessness of Defendants and their representatives as set forth above, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

## XI.

## DEMAND FOR ACCOUNTING

150. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1   this cause of action.

2   151. The elements for a claim for accounting are: (i) a fiduciary relationship or other circumstances

3   appropriate to the remedy, and (ii) a balance due from to Defendant to Plaintiffs that can only be

4   ascertained by an accounting. Witkin, Cal. Procedure 5th ed. (2008) Pleadings, Section 820.

5

6   152. Defendants have held themselves out to be Plaintiffs' creditors and mortgage servicers. As a

7   result of this purported relationship with Plaintiffs, said Defendants have a duty to Plaintiffs to

8   properly account for payments made by Plaintiffs. Moreover, a fiduciary relationship between

9   the parties is not required to state a cause of action for accounting. All that is required is that

10  some relationship exists that requires an accounting.

11

12  153. The mortgage contract between Defendants and Plaintiffs allows Defendants to pay for default-

13  related services when necessary or appropriate, and to be reimbursed by the borrowers, but it

14  does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor

15  does it allow Defendants to incur unnecessary fees.

16  154. Nevertheless, it is alleged, upon information and belief, that Defendants mark-up prices charged

17  by vendors and then, without disclosing the mark-up, assess borrowers' accounts for the higher,

18  marked-up fee, so Defendants can earn a profit.

19

20  155. Defendants are aware that it is improper to mark-up and/or assess unnecessary fees on

21  borrowers' accounts for default-related services. Therefore, Defendants fraudulently conceal

22  these fees on borrowers' accounts, omitting any information about Defendants' additional

23  profits, by identifying them on mortgage statements only as "Other Charges," "Other Fees,"

24  "Miscellaneous Fees" or "Corporate Advances."

25

26  156. Plaintiffs have made mortgage payments to Defendants and their successors since 2007.

27  Plaintiffs believe and are informed that the amount claimed due and owing at the time of the

28  recording of the Notice of Default of $5,118.12, is not correct.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
33

157. Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, which are not allowed by law.

158. It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein. Therefore, these monies are due to be either credited back to Plaintiffs in full, or credited to the rightful owner of Plaintiffs' Note and Mortgage.

159. The actual amount of the arrearages on Plaintiffs' loan and the actual amount of money due from Plaintiffs to Defendants, and vice versa, is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

///

///

///

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against each Defendant, jointly and severally, as follows:

1. For damages sustained by Plaintiffs due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. Pursuant to Cal. Bus. & Prof. Code §17200, *et seq.,* that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them, be permanently enjoined from making any false or misleading statements or falsely reporting negative credit to reporting agencies, and from selling the foreclosed property on an unlawfully procured debt;

3. Pursuant to Cal. Bus. & Prof. Code §17200, *et seq.,* that this Court make such orders or

---

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

34

judgments necessary to prevent the use or employment by any Defendant of any act which violates §17200, *et seq.;* and to restore to any person in interest, any money or property, real or personal, which may have been acquired by means of any such act;

4. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

5. For interest on the sum at the rate of 10% per annum;

6. For punitive damages against Defendants due to their intentional and wrongful acts;

7. For all relief granted under California Civil Code §2924.12(b);

8. For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief granted under Civil Code §2924.12;

9. For injunctive relief as set forth herein; and

10. For such other and further relief as this Court deems just and appropriate.

Dated: May 9, 2013

LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

By: _____
Joseph R. Manning Jr., Esq.
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit A**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

36



1 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2920.5 (2013)*

**First of 2 versions of this section**

**§ 2920.5.  (First of two) Definitions**

For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c)

(1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or

through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

**HISTORY:**

Added Stats 2012 ch 86 § 2 (AB 278), effective January 1, 2013.

**NOTES:**

Note

Stats 2012 ch 86 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

Hierarchy Notes:

Page 1

 LexisNexis®

8 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.4 (2013)*

**First of 2 versions of this section**

**§ 2923.4. (First of two) Purpose of Act; Loss mitigation options; Construction**

(a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.

(b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

**HISTORY:**

Added Stats 2012 ch 86 § 3 (AB 278), effective January 1, 2013.

**NOTES:**

Editor's Notes

 LexisNexis®

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.5 (2013)*

First of 3 versions of this section

**§ 2923.5. (First of three; Repealed January 1, 2018) Notice of default, grace period; Contact to assess borrower's financial situation; Due diligence requirement; Discussion of options to avoid foreclosure; Applicability**

(a)

(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that

4

Cal Civ Code § 2923.5

purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 2 (SB 1137), effective July 8, 2008, operative September 6, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 1 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 4 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 4 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (Second of two).

**Amendments:**

**2009 Amendment:**

(1) Substituted "initial contact" for "contact" in subd (a)(1); (2) amended subd (b) by substituting (a) "declaration that" for "declaration from"; (b) "agent has" for "agent that it has"; (c) "has tried" for "tried"; and (d) "that no contact was required pursuant to subdivision (h)" for "the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent"; (3) amended the first sentence of subd (f) by adding (a) ", with consent given in writing,"; and (b) "the borrowers financial situation and"; (4) substituted subd (h)(3) for former subd (h)(3) which read: "(3) The borrower has filed for bankruptcy, and the proceedings have not been finalized."; (5) amended the first sentence of subd (i) by substituting (a) "mortgages or deeds of trust recorded" for "loans made"; and (b) "owner-occupied residential real property containing no more than four dwelling units" for "residential real property and are for owner-occupied residences"; and (6) added "as indicated to the lender in loan documents" in the second sentence of subd (i).

**2012 Amendment:**

(1) Amended the introductory clause of subd (a)(1) by adding (a) "mortgage servicer,"; and (b) "both of the following:"; (2) added subdivision designation (a)(1)(A); (3) amended subd (a)(1)(A) by (a) adding "Either"; and (b) substituting "subdivision (e)" for "subdivision (g)"; (4) added subds (a)(1)(B) and (g); (5) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" wherever it appears in subds (a)(2), (b), (d), and (e); (6) substituted "recorded" for "filed" in subd (b) and in the first sentence of the introductory paragraph of subd (e); (7)

Cal Civ Code § 2923.5

substituted "because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5" for "pursuant to subdivision (h)" in subd (b); (8) deleted former subd (c) which read: "(c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made."; (9) redesignated former subds (d), (f), (g), (i), and (j) to be subds (c)-(f), and (h); (10) substituted "mortgage servicer's" for "mortgagee's, beneficiary's, or authorized agent's" in subd (c); (11) deleted former subd (e) which read: "(e) For purposes of this section, a 'borrower' shall include a mortgagor or trustor."; (12) substituted "borrower's" for "borrowers" in the first sentence of subd (d); (13) deleted former subd (h) which read: "(h) Subdivisions (a), (c), and (g) shall not apply if any of the following occurs: (1) The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent. (2) The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries. (3) A case has been filed by the borrower under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."; (14) substituted subd (f) for former subd (f) which read: "This section shall apply only to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units. For purposes of this subdivision, 'owner-occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents"; and (15) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (h). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)


Note

Stats 2008 ch 69 provides:

SECTION 1.  The Legislature finds and declares all of the following:

   (a) California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007. In 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

   (b) High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance, the number of completed California foreclosure sales in 2007 increased almost threefold from 1,902 in the first quarter to 5,574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.

   (c) Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

7

Cal Civ Code § 2923.5

(d) It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

(e) According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternatives to help them avoid foreclosure.

(f) As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

(g) This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

SEC. 7.  Nothing in this act is intended to affect any local just-cause eviction ordinance. This act does not, and shall not be construed to, affect the authority of a public entity that otherwise exists to regulate or monitor the basis for eviction.

SEC. 8.  The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**Law Review Articles:**

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

**Annotations:**

Preemption Issues Arising Under Home Owners' Loan Act of 1933, *12 U.S.C.A. §§ 1461* et seq. *13 ALR Fed 2d 161.*

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

**LexisNexis 50 State Surveys, Legislation & Regulations**

 **LexisNexis®**

6 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.55 (2013)*

First of 2 versions of this section

§ 2923.55. (First of two; Repealed January 1, 2018) Recording of notice of default; Conditions; Information in writing to borrower required; "Due diligence"; Applicability

(a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b)

(1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be

Cal Civ Code § 2923.55

entitled to certain protections under the federal Servicemembers Civil Relief Act *(50 U.S.C. Sec. 501* et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers,

10

provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 6 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Former Sections:

Former CC § 2923.55, relating to specified conditions for which CC § 2923.52 is inapplicable, was added Stats 2009-2010 2d Ex Sess ch 4 § 6 (SB 7XX), effective May 21, 2009, and ch 5 § 6 (AB 7XX), effective May 21, 2009, and repealed January 1, 2011, by its own terms.



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.6 (2013)*

First of 3 versions of this section

**§ 2923.6. (First of three; Repealed January 1, 2018) Legislative findings and declarations; Loan modification or workout plan; Conditions for recording notice of default or sale, or conducting trustee's sale; Denial of application**

(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

Cal Civ Code § 2923.6

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this

section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 3 (SB 1137), effective July 8, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 2 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 7 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 7 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (Second of two).

**Amendments:**

**2009 Amendment:**

Amended the introductory clause of subd (a) by (1) adding "or to all investors under a pooling and servicing agreement,"; (2) substituting "party in the loan pool or investor under a pooling and servicing agreement" for "parties"; and (3) adding "to the loan pool or investors in the pooling and servicing agreement".

**2012 Amendment:**

(1) Amended the introductory clause of subd (a) by (a) adding "that mortgage"; (b) substituting "pooling" for "polling" after "investor under a"; and (c) adding "mortgage" before "servicer acts in"; (2) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" in subd (b); (3) added subds (c)–(j); (4) redesignated former subd (c) to be subd (k); and (5) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (k). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

**Note**

Stats 2008 ch 69 provides:



13 *of* 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2923.7 (2013)*

**First of 2 versions of this section**

**§ 2923.7. (First of two) Responsibilities of single point of contact; Applicability**

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g)

(1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

**HISTORY:**

Added Stats 2012 ch 86 § 9 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under CC § 2920.5 (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

1 of 1 DOCUMENT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924 (2013)*

**§ 2924.  Transfer as security deemed mortgage or pledge; Exercise of power of sale; No liability for good faith error; Recital of acts as prima facie evidence; Privileged communications; Rebuttable presumption**

(a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

Cal Civ Code § 2924

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are

18

necessary to carry out the duties described in *Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.*

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

**HISTORY:**

Added Stats 2009-2010 2d Ex Sess ch 4 § 8 (SB 7XX), effective May 21, 2009, operative January 1, 2011. Amended Stats 2010 ch 180 § 1 (SB 1221), effective January 1, 2011, operative January 1, 2011; Stats 2012 ch 86 § 10 (AB 278), effective January 1, 2013, ch 87 § 10 (SB 900), effective January 1, 2013, ch 556 § 2.5 (AB 1599), effective January 1, 2013.

**NOTES:**

**Former Sections:**

Former CC 2924, similar to the present section, was added Stats 2009-2010 2d Ex Sess ch 5 § 8 (AB 7XX), effective May 21, 2009, operative January 1, 2011, amended Stats 2010 ch 180 § 2 (SB 1221), effective January 1, 2011, operative January 1, 2011, and repealed Stats 2012 ch 86 § 11 (AB 278), effective January 1, 2013, ch 87 § 11 (SB 900), effective January 1, 2013, and ch 556 § 3 (AB 1599), effective January 1, 2013.

Former § 2924, similar to the present section, was enacted 1872, amended Code Amdts 1873-74 ch 612 § 256; Stats 1917 ch 204 § 1; Stats 1923 ch 374 § 1; Stats 1931 ch 764 § 1; Stats 1933 ch 642 § 1, reenacted Stats 1935 ch 650 § 1, amended Stats 1939 ch 983 § 1; Stats 1959 ch 1890 § 1; Stats 1972 ch 1056 § 1; Stats 1973 ch 817 § 1, operative July 1, 1974; Stats 1981 ch 427 § 1; Stats 1990 ch 657 § 1; Stats 1993 ch 686 § 2; Stats 1995 ch 752 § 1; Stats 1996 ch 483 § 1; Stats 1999 ch 974 § 8; Stats 2000 ch 636 § 6; Stats 2006 ch 575 § 4, effective January 1, 2007; Stats 2009-2010 2d Ex Sess ch 4 § 7, effective May 21, 2009, ch 5 § 7, effective May 21, 2009, repealed January 1, 2011, and repealed January 1, 2011, by its own terms.

**Amendments:**

**2010 Amendment:**

Added (1) "Except as provided in paragraph (4)," in subd (a)(3); and (2) subd (a)(4). (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605.*)

**2012 Amendment:**

(1) Amended subd (a)(4) by substituting (a) "record" for "file"; and (b) "recording" for "filing"; (2) added subds (a)(5) and (a)(6); and (3) substituted subd (f) for former subd (f) which read: "(f) This section shall become operative on

Cal Civ Code § 2924

January 1, 2011." (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605*.)

**Historical Derivation:**

(a) *CC § 2924b*, as added Stats 1933 ch 642 § 2. Reenacted by Stats 1935 ch 650 § 2, Stats 1939 ch 983 § 2, Stats 1951 ch 417 § 2, Stats 1957 ch 1865 § 11.

(b) Field's Draft NY CC § 1610.

**Note**

Stats 1990 ch 657 provides:

SEC. 3. It is the intent of the Legislature in enacting this act to supersede the holding in *Anderson v. Heart Federal Savings, 208 Cal. App. 3d 202*, to the extent that decision restricted the ability of mortgagees and beneficiaries under trust deeds to demand payment of all amounts in default under the terms of an obligation secured by a mortgage or trust deed as a condition to reinstatement of the obligation and avoidance of a sale of the security property to satisfy the obligation.

Stats 2009-2010 2d Ex Sess ch 4 provides:

SECTION 1. This act shall be known as the California Foreclosure Prevention Act.

SEC. 2. The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state and local economies due to skyrocketing residential property foreclosure rates in California. Those high foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise.

(b) It is essential to the economic health of California for the state to ameliorate the deleterious effects that will result from the continued high rate of foreclosure of residential properties by modifying the foreclosure process to provide additional time for borrowers to work out loan modifications while providing an exemption for mortgage loan servicers that have implemented a comprehensive loan modification program. This change in accessing the state's foreclosure process is essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market if the foreclosure may be avoided through a loan modification. Those additional foreclosures could further destabilize the housing market with significant, corresponding deleterious effects on the state and local economies.

**Law Review Articles:**

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511*.

**Cross References:**

Mode of recording instruments affecting real property: *CC §§ 1169* et seq.



15 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.9 (2013)*

**First of 2 versions of this section**

**§ 2924.9.  (First of two; Repealed January 1, 2018) Written communication to borrower required after mortgage servicer recorded notice of default pursuant to Section 2924**

(a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

Cal Civ Code § 2924.9

(d) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 12 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two)

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note


® LexisNexis®

16 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.10 (2013)

First of 2 versions of this section

§ 2924.10.  (First of two; Repealed January 1, 2018) Acknowledgment of receipt of loan modification application; Responsibilities of mortgage servicer

(a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

Cal Civ Code § 2924.10

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 13 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.11 (2013)*

**First of 4 versions of this section**

**§ 2924.11.  (First of four; Repealed January 1, 2018) Approval of foreclosure prevention alternative; Recording notice of default or conducting a trustee's sale; Prohibited acts; Rescission or cancellation; Fees; Subsequent mortgage servicer**

(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

Cal Civ Code § 2924.11

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 14 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



21 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.12 (2013)*

First of 4 versions of this section

**§ 2924.12. (First of four; Repealed January 1, 2018) Actions concerning trustee's deed upon sale; Injunctive relief; Liability; Damages; Violations; Attorney's fees and costs**

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court

Cal Civ Code § 2924.12

may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 16 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 **LexisNexis®**

25 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.15 (2013)*

First of 4 versions of this section

§ 2924.15.  (First of four; Repealed January 1, 2018) Applicability of specified code sections to first lien mortgages or deeds of trust secured by owner-occupied residential real property containing no more than four dwelling units

(a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

HISTORY:

Added Stats 2012 ch 86 § 18 (AB 278), effective January 1, 2013, repealed January 1, 2018.

NOTES:

 LexisNexis®

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc,
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.17 (2013)*

First of 2 versions of this section

§ 2924.17. (First of two) Recording or filing of certain documents; Review of evidence to substantiate borrower's default and right to foreclose; Uncorrected violations; Civil penalties

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in *Section 17204 of the Business and Professions Code,* or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these

Cal Civ Code § 2924.17

entities. This subdivision shall be inoperative on January 1, 2018.

**HISTORY:**

Added Stats 2012 ch 86 § 20 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 **LexisNexis®**

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.18 (2013)*

First of 2 versions of this section

§ 2924.18. (First of two; Repealed January 1, 2018) Recording notice of default, notice of sale, or conducting a trustee's sale; Applicability of section to depository institutions and specified licensed persons that foreclosed on residential properties containing no more than four dwelling units; Notifications; Subsequent mortgage servicer

(a)

(1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

(2) If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

Cal Civ Code § 2924.18

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 21 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes



33 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.19 (2013)*

First of 2 versions of this section

§ 2924.19.  (First of two; Repealed January 1, 2018) Actions concerning trustee's deed; Injunctive relief;
Liability; Damages; Violations; Attorney's fees and costs

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to
enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the
mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations
giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing
that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized
agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material
violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent
where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court
finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer,
mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or

Cal Civ Code § 2924.19

statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17 or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 22 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

35 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.20 (2013)

First of 2 versions of this section

§ 2924.20. (First of two) Adoption of regulations; Enforcement


Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

HISTORY:

Added Stats 2012 ch 86 § 23 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Hierarchy Notes:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit B**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
37

FIl.
CFS 3P

**DOC #  2011-0174265**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

APR 05, 2011    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:            24.00

AZTEC FORECLOSURE CORPORATION
3300 N. Central Ave., #2200
Phoenix, AZ 85012

DA:            1

**PAGES:        3**

**1058**

Trustee Sale No. 11-517764VBK   Title Order No.

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This estimated amount is $5,118.12 as of April 4, 2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: VirtualBank, a Division of Lydian Private

T.S. #: 11-517764VBK    ORDER #:

1059

Bank, C/O Aztec Foreclosure Corporation, 3300 N. Central Ave., #2200, Phoenix, AZ 85012, (602) 222-5711 or (800) 731-0850.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Trustee under a Deed of Trust dated 11/06/07, executed by Lee J Ware and Irma Ware, Husband and Wife, as Joint Tenants, as trustor, to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Lydian Mortgage, a Division of Lydian Private Bank, a Federal Savings Bank of America, as Beneficiary recorded on November 15, 2007 in Instrument No. 2007-0720000 in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. Including the note(s) for the sum of $330,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 02/01/11 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES AND ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS ADVANCED BY THE BENEFICIARY.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached declaration pursuant to CALIFORNIA CIVIL CODE §2923.5

DATE: 04/04/11

AZTEC FORECLOSURE CORPORATION
As Trustee, By LSI Title Company, As Agent

**Marco Marquez**

1060

## DECLARATION OF COMPLIANCE for NOTICE OF DEFAULT

### Exhibit to Notice of Default

Borrower: Lee Ware                           T.S. #

Property Address: 8248 Rockview Dr          Ln # 23850373
El Cajon CA 92021

IMPORTANT: Please contact our office toll free at 877-908-4357 to discuss options for avoiding foreclosure. You may also contact a HUD-certified housing counseling agency by calling toll free at 800-569-4287.

The undersigned Mortgagee, Beneficiary or their authorized agent (collectively, "Beneficiary") represents and declares that one of the below three requirements of California Civil Code §2923.5 have been met.

- ☑ Pursuant to California Civil Code §2923.5(a)(2), not less than thirty (30) days prior to the concurrent recording of the Notice of Default, Borrower was contacted in person or by telephone to assess Borrower's financial circumstances and to explore options for Borrower to avoid foreclosure
- Borrower was unable to be contacted pursuant to California Civil Code §2923.5(a)(2); Beneficiary undertook diligent efforts to contact Borrower to discuss alternatives to foreclosure, and in a manner compliant with California Civil Code §2923.5(g)(2). Thirty days or more have elapsed since these due diligent efforts were completed.
- California Civil Code §2923.5 is not required because;
  - The real property is not an owner-occupied single family residence;
  - The loan was not originated between January 1, 2003 and December 31, 2007;
  - The borrower surrendered the property as evidenced by the returning of the keys to the lender or a letter surrendering the property was delivered to the lender
  - The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their home on how to extend the foreclosure process and avoid their contractual obligations or mortgagees or beneficiaries pursuant to California Civil Code §2923.5(h)(2); or
  - Borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to California Civil Code §2923.5(h)(3)

Dated: April 4th 2011

Beneficiary/Authorized Agent Signature
Printed Name: Dolores Jennings
Title: Sr Collections Manager

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit C**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
38



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 11/11)

1. **EXCLUSIVE RIGHT TO SELL:** _____ Lee J. Ware, Irma Ware _____ ("Seller")
hereby employs and grants _____ Pacific Sotheby's International Realty _____ ("Broker")
beginning (date) _____ November 13, 2012 _____ and ending at 11:59 P.M. on (date) _____ May 13, 2013 _____ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of _____ El Cajon _____ ,
County of _____ San Diego _____ , Assessor's Parcel No. _____ 388-031-17-00 _____ ,
California, described as: _____ 8248 Rockview Dr _____ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that
are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: _____
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase
agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the
sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase
agreement.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _____
   B. Additional Terms: _____ Dollars ($ 329,000-349,000)

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker
   individually and may be negotiable between Seller and Broker (real estate commissions include all
   compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ 6.000 percent
      of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____ , as follows:
      AND
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a buyer(s) who
          offers to purchase the Property on the above price and terms, or on any price or terms acceptable to Seller. (Broker is
          entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing
          Period, or any extension).
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this
          Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to
          anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during
          the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker
          submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however,
          shall have no obligation to Broker under paragraph 4A(2) unless, not later than 3 calendar days after the end of the Listing
          Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise
          transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A
      shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount
      equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow
      expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s)
          ("MLS") by offering to MLS brokers out of Broker's compensation specified in 4A, either ☐ 2.500 percent of the
          purchase price, or ☐ $ _____ .
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
      submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property
      involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
          unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
          Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is
          not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by photocopy
machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.
RLA REVISED 11/11 (PAGE 1 OF 4)

Seller's Initials ( ___ ) ( _I-W_ )
Reviewed by _____ Date _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 4)**

| Agent: Carla Johnson | Phone: (619)339-3880 | Fax: | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Pacific Sotheby's International Realty 8310 La Mesa Blvd La Mesa, CA 91942 | | | |

8248 Rockview Dr
Property Address: El Cajon, CA  92021                                                Date: November 13, 2012

5.  **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

6.  **MULTIPLE LISTING SERVICE:** All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Seller acknowledges that Broker is required to comply with all applicable MLS rules as a condition of entry of the listing into the MLS and Seller authorizes Broker to comply with all applicable MLS rules. MLS rules require that the listing sales price be reported to the MLS. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 48 hours or some other period of time after all necessary signatures have been obtained on the listing agreement. However, Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SEL or the locally required form).
    **Information that can be excluded:**
    A.  **Internet Display;**
        (1) Seller can instruct Broker to have the MLS not display the Property on the Internet. Seller understands that this would mean consumers searching for listings on the Internet may not see information about the Property in response to their search; (2) Seller can instruct Broker to have the MLS not display the Property address on the Internet. Seller understands that this would mean consumers searching for listings on the Internet may not see the Property's address in response to their search.
    B.  **Features on MLS Participant and Subscriber Websites;**
        (1) Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites that display the Property listing to have (i) the ability to write comments or reviews about the Property on those sites; or (ii) the ability to hyperlink to another site containing such comments or reviews if the hyperlink is in immediate conjunction with the Property. Seller understands (i) that this opt-out applies only to Websites of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites. (2) Seller can instruct Broker to advise the MLS that Seller does not want MLS Participant or Subscriber Websites that display the Property listing to operate (i) an automated estimate of the market value of the Property; or (ii) have the ability to hyperlink to another site containing such automated estimate of value if the hyperlink is in immediate conjunction with the Property. Seller understands (i) that this opt-out applies only to Websites of MLS Participants and Subscribers who are real estate brokers and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
    Seller acknowledges that for any of the above opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller (C.A.R. Form SEL or the locally required form). Information about this listing will be provided to the MLS of Broker's selection unless a form instructing Broker to withhold the listing from the MLS is attached to this listing Agreement.

7.  **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

8.  **BROKER'S AND SELLER'S DUTIES:** (a) Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to (i) order reports and disclosures necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers. (b) Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.

9.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

Copyright © 1991-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RLA REVISED 11/11 (PAGE 2 OF 4)

Seller's Initials (X_____)(X_ I. W)
Reviewed by _____ Date _____



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 4)**

Lee Ware

Property Address: *8248 Rockview Dr.*
*El Cajon, CA  92021*                                    Date: *November 13, 2012*

**10. AGENCY RELATIONSHIPS:**

A. **Disclosure:** If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" form prior to entering into this Agreement.

B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.

C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and Buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and such Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. **Other Sellers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.

E. **Confirmation:** If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**11. SECURITY AND INSURANCE:** Broker is not responsible for loss or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**16. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

**17. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☒ Short Sale Information and Advisory (C.A.R. Form SSIA)

_____
_____
_____
_____
_____
_____

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 20A.

**19. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

Copyright © 1991-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC
**RLA REVISED 11/11 (PAGE 3 OF 4)**

Seller's Initials _____ ( x _I. W )
Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

Lee Ware

**RESIDENTIAL LISTING AGREEMENT · EXCLUSIVE (RLA PAGE 3 OF 4)**

8248 Rockview Dr
Property Address: El Cajon, CA  92021                                                 Date: *November 13, 2012*

20. **DISPUTE RESOLUTION:**
   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 20B(2) below. Paragraph 20B(2) below applies whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B. **ARBITRATION OF DISPUTES:** (1) Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 20B(2) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
   (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

   "**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

   "**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

                                   Seller's Initials /_____/ _I._ / W/ Broker's Initials ___ /____

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller X _____  Lee J. Ware  Date 11-13-12
Address 8248 Rockview Dr _____ City El Cajon _____ State CA  Zip 92021
Telephone 619 277-4793 , Fax 619 328-9134 E-mail _____

Seller X _____  Irma Ware  Date 11-13-12
Address _____  City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Firm) Pacific Sotheby's International Realty          DRE Lic. # 01767484
By (Agent) _____ Carla Johnson DRE Lic. # 01890924  Date 11-13-12
Address 8310 La Mesa Blvd _____ City La Mesa _____ State CA  Zip 91942
Telephone (619)339-3880 ____ Fax (619)337-1703 ____ E-mail jcatc@yahoo.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 11/11 (PAGE 4 OF 4)                                         Reviewed by _____ Date _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 4)**                Lee Ware



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 11/11)

Property Address: _8248 Rockview Dr, El Cajon, CA  92021_ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.

   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.

   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or (regardless of the date of occurrence) that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."

   D. **Condominium and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller's Initials (X _____ )(X _I.W_ )

SA REVISED 11/11 (PAGE 1 OF 2)

Reviewed by _____ Date _____

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

| | |
|---|---|
| Agent: **Carla Johnson** | Phone: **(619)339-3880** Fax: Prepared using zipForm® software |
| Broker: **Pacific Sotheby's International Realty 8310 La Mesa Blvd La Mesa, CA 91942** | |

Property Address: *8246 Rockview Dr*
*El Cajon, CA  92021*                                    Date: *November 13, 2012*

## 3. CONTRACT TERMS AND LEGAL REQUIREMENTS:

**A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

## 4. MARKETING CONSIDERATIONS:

**A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

## 5. OTHER ITEMS: _____

---

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller X _____                                Date *11-13-12*
Print Name *Lee J. Ware*

Seller X _____                                Date *11-13-12*
Print Name *Irma Ware*

Real Estate Broker *Pacific Sotheby's International Realty*          By _____
                                                                    (Agent) *Carla Johnson*

Address *8310 La Mesa Blvd*                   City *La Mesa*           State  *CA*   Zip *91942*

Telephone *(619)339-3880*     Fax *(619)337-1703*    E-mail *lcatc@yahoo.com*

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by | Date |
|---|---|

SA REVISED 11/11 (PAGE 2 OF 2)

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Lee Ware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit D**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
39

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3300 N. Central Ave., #2200
Phoenix, AZ 85012

---

Trustee Sale No. 11-517764 SDU
Title Order No. 110187328-CA-BFI
APN 388-031-17-00

<span style="float:right">Space above this line for recorder's use only</span>

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/06/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **04/03/13** at **10:00 am**, Aztec Foreclosure Corporation as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by Lee J Ware and Irma Ware, Husband and Wife, as Joint Tenants, as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Lydian Mortgage, a Division of Lydian Private Bank, a Federal Savings Bank of America, as Beneficiary, Recorded on 11/15/07 in Instrument No. 2007-0720000 of official records in the Office of the county recorder of SAN DIEGO County, California; Sabadell United Bank, N.A. as assignee of the Federal Deposit Insurance Corporation, as Receiver for Lydian Private Bank, Palm Beach, Florida, pursuant to that Certain Purchase and Assumption Agreement dated as of August 19, 2011, with Lydian Private Bank also being known of record as VirtualBank, a Division of Lydian Private Bank, as the current Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), at the entrance to the East County Regional Center by statue, 250 E. Main Street, El Cajon, CA, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
8248 ROCKVIEW DR, EL CAJON, CA 92021

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$397,993.85**  (Estimated)

Page 1

T.S. #:      **11-517764 SDU**
ORDER#:      110187328-CA-BFI

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  The property heretofore described is being sold "as is".

DATE: **3-11-13**

*Elaine Malone*
Elaine Malone
Assistant Secretary & Assistant Vice President
Aztec Foreclosure Corporation
c/o 4665 MacArthur Court, Suite 250
Newport Beach, CA 92660
Phone: (866) 260-9285 or (602) 222-5711
Fax: (847)627-8803
www.aztectrustee.com

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 11-517764. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| Call 714-573-1965<br>http://www.Priorityposting.com | Or | Aztec Foreclosure Corporation<br>(866)260-9285<br>www.aztectrustee.com |
|---|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit E**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
40



**BAYVIEW**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL 33146



April 09, 2013

**Borrower:**

LEE WARE
8248 ROCKVIEW DRIVE
EL CAJON, CA 92021

**Loan Number:** 0023850373          **Property Address:** 8248 ROCKVIEW DRIVE
EL CAJON, CA 92021

Dear Customer:

We have completed our review of your request for one of our foreclosure prevention programs and have determined that you are ineligible for our programs for the reasons listed below:

> We service your loan on behalf of an investor or group of investors that has not approved a Shortsale of your loan.

If our foreclosure action was put on hold, it will resume immediately. If your financial situation changes, or you wish to be reconsidered for other programs, please contact us at the number referenced in this letter.

We will review the documentation provided and notify you by mail if further information is needed.

Within 30 days of receipt of all the required documentation, we will provide a written decision regarding your eligibility for one of our assistance programs.

If your loan is delinquent, collection/foreclosure activity currently in progress will continue to proceed during the review process of your request for a workout. This letter and the loan workout review process shall not waive any of our rights or your obligations under the note. In other words, you are responsible to continue making your loan payments.

The consumer reporting agency contacted that provided information that influenced our decision in whole or in part was CBA Information Solutions, 825 East Gate Blvd., Suite 310, Garden City, NY 11530. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to CBA Information Solutions.

AM036 V 1.2 Loan No.: 0023850373

You have 30 days from the da       this letter to provide evidence that ou      ermination was in error and to appeal the denial. In order to appeal, you must submit specific documentation in support of your belief that the decision was in error. The documentation must be submitted in writing to:

Bayview Loan Servicing
895 SW 30th Ave. Suite 202
Pompano Beach, FL 33069

You may fax the information to: Bryce Kolls, (786) 470-3598

The documentation must be submitted no later than 30 days from the date of this letter. If you do not submit the appeal within the time period provided and foreclosure proceedings were previously initiated, the proceedings will resume upon the expiration of the 30 day appeal period.

In order to be considered for other foreclosure prevention programs that may be available such as other loan modification options, deed in lieu, short sale please contact us to discuss.

If you have any questions regarding the denial or appeal process please do not hesitate to contact us at (877) 411-7169.

Please note that you can seek assistance at no charge from a HUD-approved housing counselor and can request assistance in understanding these notices by calling the HOPE Hotline number at 888-995-HOPE.

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

Notice: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission Southeast Region Suite 1500 225 Peachtree Street, NE Atlanta, GA 30303 OR Federal Trade Commission Equal Credit Opportunity Washington, DC 20580.

Sincerely,

*Bryce Kolls*

Bryce Kolls, Asset Manager
Bayview Loan Servicing, LLC
Phone Number:  (877) 411-7169 Monday - Friday 8:30 a.m. - 8:00 p.m., Eastern
Fax Number:     (786) 470-3598



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit F**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
41



April 15, 2013

11-517764 SDU
Lee Ware
8248 Rockview Dr
El Cajon, CA 92021

Re:    Notice of Postponement of Foreclosure Sale
       Our File No.:  11-517764 SDU
       Property:    8248 Rockview Dr, El Cajon, Ca 92021

Dear Borrower,

This notice is to advise you that the foreclosure sale currently scheduled on the above referenced property has been postponed from April 12, 2013 to May 14, 2013. The location and time of the auction is:
at the entrance to the East County Regional Center by statue, 250 E. Main Street, El Cajon, CA at 10:00 am.

## CAUTION:    YOU    MAY    NOT    RECEIVE    WRITTEN    NOTICE    OF POSTPONEMENT EACH TIME THE TRUSTEE'S SALE IS POSTPONED.

You can obtain information about future trustee's sale postponements by attending the scheduled trustee's sale at the time and location specified in the Notice of Trustee's sale and at the date and time set forth in the most recent public declaration of postponement. You may also obtain information about further trustee's sale postponements by calling (877) 257-0717 or by visiting our website at: http://aztectrustee.com/reports/salesreport and by accepting the terms and conditions for use of that resource.   Postponement information obtained by calling the above 800 number or accessing the above-referenced website is subject to change and is provided solely as a courtesy and without liability or recourse.

## UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE WITHOUT FURTHER NOTICE.

*This writing is an attempt to collect a debt, and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only.*

Sincerely,

Aztec Sales Dept

3636 N. Central Ave., Suite #400, Phoenix, AZ 85012
(602) 638-5700 (877) 257-0717 telephone
(602) 638-5748 fax
www.aztectrustee.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit G**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
42

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| | | |
|---|---|---|
| Attorney:<br>Joseph R. Manning, Jr.<br>Info@ManningLawOffice.com | Office: 949.200.8755<br>Facsimile: 866.843.8308<br>www.ManningLawOffice.com | 4667 MacArthur Blvd., Ste. 150,<br>Newport Beach, CA, 92660 |

May 8, 2013

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd. 5th Floor
Coral Gables, FL 33146
Fax: 248-824-7960/305-631-5660/305-644-3931

Aztec Foreclosure Corp
3300 N. Central Ave 2200
Phoenix, AZ 85012
Fax: 847-627-8803

> **RE:** **Lee and Irma Ware**
> **Loan Number:** **0023850373**

Dear Sir or Madam:

This office has been retained by Lee and Irma Ware with regard to real property **8248 Rockview Dr., El Cajon, CA 92021,** with lender Bayview Loan Servicing and set for auction under Aztec Foreclosure Corp., scheduled for May 14, 2013.

Pursuant to the 2013 California Homeowner's Bill of Rights, specifically Civil Code §2923.6, the mortgage servicer shall evaluate a borrower's application for a foreclosure prevention alternative if there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application, and that change is documented and submitted to the mortgage servicer. In addition, the mortgage servicer, mortgagee, beneficiary, or authorized agent **shall not record a notice of default or notice of sale, or conduct a trustee's sale,** while the complete foreclosure prevention alternative application is pending.

Please be advised that in this case, the borrowers' financial circumstances have materially changed as their income and expenses have changed since they last submitted an application for foreclosure alternatives. Specifically, the borrowers' routine expenses have increased which is a material change of circumstance.

At this time, there is a sale date scheduled for **May 14, 2013** which is in violation of the Homeowner's Bill of Rights, specifically California Civil Code §2923.6. Pursuant to the provisions of Civil Code §2923.6, the current sale date must be **cancelled** and the borrowers shall be **evaluated** for a foreclosure prevention alternative, due to the material change in their financial circumstances.

**Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement.** Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)].

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

     Please confirm that the borrowers' application will be evaluated for any and all available foreclosure prevention alternatives, and that the sale date has been cancelled, and advise our office by Thursday, May 9, 2013 before 5:00 p.m., or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

     If you have any questions, please call me directly at (949) 200-8755.



Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.



Broadcast Report

P 1
05/08/2013 10:59
Serial No. A4FJ011001658
TC:      169961

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 12488247960 | 05-08 10:51 | 00:01:29 | 002/002 | OK | |
| 13056315660 | 05-08 10:52 | 00:01:40 | 002/002 | OK | |
| 13056443931 | 05-08 10:54 | 00:01:41 | 002/002 | OK | |
| 18476278803 | 05-08 10:56 | 00:03:20 | 002/002 | OK | |

Note TMI:Timer TX, POL:Polling, ORG:Original Size Sending, FME:Frame Erase TX;
PGS:Page separation TX, MIX:Mixing Original TX; CMA:Manual TX, CONF:Confec;
EEQ:ECoCard, PC:Tran TX, DAD:Double-sided Binding foreclosure, SO:Special Original;
ECONF:F-code, MTX:Relay TX, RLY:Relay, MEX:Confidential, BUL:Bulletin, RIP:RIP Fax;
IPADR:IP Address Fax, I-Fax:Internet Fax

Result OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
TEL: TEL from TEL NG: Other Error; Bry: Busy, M-FULL:Memory Full, LOVR:Receiving length Over,
POLIMEExclusion page Over, FAX:File Error, REIP:Code Error, NRN:Non Response Error,
REN:RBN Response Error, PRINT:Compulsory Memory Document Print,
DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document send.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:                          Office: 949.200.8755           4667 MacArthur Blvd., Ste. 150,
Joseph R. Manning, Jr.             Facsimile: 866.845.8808        Newport Beach, CA, 92660
Info@ManningLawOffice.com          www.ManningLawOffice.com

May 8, 2013

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd. 5th Floor
Coral Gables, FL 33146
Fax: 248-824-7960/305-631-5660/305-644-3931

Aztec Foreclosure Corp.
3300 N. Central Ave 2200
Phoenix, AZ 85012
Fax: 847-627-8803

RE: Lee
Loan                238

Dear Sir or Madam:

This office has been re                         with               al property 8248 Rockview
Dr., El Cajon, CA 92021, with                    loan             ncing              auction under Aztec
Foreclosure Corp., scheduled for

Pursuant to the 2013 Californi                              specifically Civil Code §2923.6, the
mortgage servicer shall evaluate a borrowe                       closure prevention alternative if there
has been a material change in the borrower'                  cumstances since the date of the borrower's
previous application, and that change is docum            t submitted to the mortgage servicer. In addition,
the mortgage servicer, mortgagee, beneficiary, or authorized agent shall not record a notice of default or
notice of sale, or conduct a trustee's sale, while the complete foreclosure prevention alternative
application is pending.

Please be advised that in this case, the borrowers' financial circumstances have materially changed
as their income and expenses have changed since they last submitted an application for foreclosure
alternatives. Specifically, the borrowers' routine expenses have increased which is a material change of
circumstance.

At this time, there is a sale date scheduled for May 14, 2013 which is in violation of the
Homeowner's Bill of Rights, specifically California Civil Code §2923.6. Pursuant to the provisions of
Civil Code §2923.6, the current sale date must be cancelled and the borrowers shall be evaluated for a
foreclosure prevention alternative, due to the material change in their financial circumstances.

Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency
enforcement. Material violations are also deemed to be a violation of a California charter or lender license
and subject to agency administrative enforcement that could jeopardize continued engagement in
California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)].