Joseph R. Manning, Jr. (SBN: 223381)
Babak Hashemi (SBN: 263494)
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, California 92660
Tel: 949.200.8755; Fax: 866.843.8308
ecf@manninglawoffic.com

Attorneys for PLAINTIFFS LEE J. WARE and IRMA WARE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE J. WARE, an individual and IRMA WARE, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> BAYVIEW LOAN SERVICING, LLC, a business entity form unknown, AZTEC FORECLOSURE CORPORATION, a business entity form unknown, and DOES 1-100, inclusive, <br><br> Defendants. | CASE No: 3:13-cv-01310-JLS-NLS <br><br> **NOTICE OF *EX PARTE* AND *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER OR STAY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATIONS OF BABAK HASHEMI, LEE AND IRMA WARE.** <br><br> DATE: JUNE 13, 2013 <br> TIME: TBD <br> COURT: 4A |

PLEASE TAKE NOTICE THAT Plaintiffs, LEE J. WARE and IRMA WARE,

hereby apply E*x Parte* to this Court, for a Temporary Restraining Order and Order to

Show Cause Re Preliminary Injunction or in the alternative a stay order.

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

*Ex Parte* relief is appropriate and necessary in this instance because the Trustee's Sale is scheduled for June 14, 2013 at 10:00 a.m. and Plaintiffs will suffer irreparable harm if Defendants were not enjoined from advertising, holding, conducting or participating in any foreclosure sale and trustee's sale of Plaintiffs' property. Plaintiffs filed suit against Defendants on May 9, 2013 in the Superior Court of California County of San Diego for causes of actions based on California law; however, Defendant's removed the action to this Federal District Court based on Diversity Jurisdiction. Plaintiffs, through their counsel requested that the foreclosure sale of the Subject Property be postponed or canceled, pending a full resolution of Plaintiffs' claims; however, the sale date remains active.

Plaintiffs' *Ex Parte* application is based on the following:
1. Plaintiffs are likely to succeed on the merits;
2. Plaintiffs will suffer irreparable harm in the absence of a TRO and a Preliminary Injunction;
3. The balance of equities tips in the Plaintiffs' favor;
4. It is in the public's interest.

///

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

2

This *ex parte* application is supported by the accompanying Memorandum of Points and Authorities, Supporting Declarations of Babak Hashemi LEE J. WARE and IRMA WARE, Ex Parte Notice, exhibits, all pleadings and papers on file, and any oral arguments that may be presented at the time of the hearing.

Dated:  June 12, 2013          LAW OFFICES OF JOSEPH R. MANNING, JR.

                              By: __/s/ Joseph R. Manning, Jr.___
                              Joseph R. Manning, Jr., Esq.
                              Babak Hashemi, Esq.
                              Attorneys for Plaintiffs

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

# __Table of Contents__

__Page__

I.   Relief Requested.............................................................................1

II.  Statement of the Case....................................................................5

III. Argument.........................................................................................10

    A. Violations of the Home Owners Bill of Rights..........................10

    B. Basis for Injunctive Relief......................................................14

        1.        Violations of CC §2923.6.....................................15

            a) Improper Denial.................................................17

        2.        Violations of Bus. And Professions code §17200..........19

            a) Standing........................................................23

            b) Unlawful, Unfair or Fraudulent Conduct..................25

            c) Defendants' Conduct...........................................27

IV.  Balance of Harms............................................................................27

V.   The Public's Interest.......................................................................29

VI.  No Bond Should be Required.........................................................30

VII. Conclusion......................................................................................30

_____

__EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION__

# Cases

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127, 1134-1135 (9th Cir. 2011)…………….……………… 5

*Allied Grape Growers v. Bronco Wine, Co.*
203 Cal. App. 3d 432 (1988) ………………………………………… 26

*Balderas v. Countrywide Bank, N.A.,*
664 F.3d 787, 790 (9th Cir. 2011)……………………………………… 4

*Birdsong v. Apple, Inc.*
590 F.3d 959, 960 (9th Cir. 2009) …………………………………… 24

*Committee on Children's Television v. General Foods Corp.*
35 C. 3d 197, 211 (1982) ……………………………………………… 26

*Hale v. Sharp Healthcare*
183 Cal. App. 4th 1371, 1383-4 (2010) …………………..……………. 24, 25

*Hall v. Time, Inc.*
158 Cal. App. 4th 847, 855-856 (2008) ……………………………… 24

*In re: Gilead Sciences Sec. Litig.*
536 F.3d 1049, 1057 (9th Cir. 2008) ……………………………….. 4

*Kasky v. Nike, Inc.*
27 Cal. 4th 939 (2002) ………………………………………………... 26

*Kearns v. Ford Motor Co.*
567 F.3d 1120, 1127 (9th Cir. 2009) …………………..……………... 25

*Khoury v. Maly's*
14 Cal. App. 4th 612, 619 (1993) …………………………………… 26

*Korean Philadelphia Presbyterian Church v. California Presbytery*
77 Cal. App. 4th 1069, (2000) ……………………………………….. 28

*Nichols v. Deutsche Bank Nat. Trust Co.*
2007 WL 4181111, at *3………………………………………….….. 28

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

*People v. Orange County Charitable Services*
  73 Cal. App. 4th 1054, 1076 (1999)……………………………….. 26

*People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater*
  118 Cal. App. 3d 863 (1981) ……………………………………… 28

*Prata v. Sup. Ct.*
  91 Cal. App. 4th 1128, 1144 (2001) …………………………………… 26

*Rabb v. BNC Mortgage Inc.*
  2009 WL 3045812 at *2(C.D. Cal. Sept 21, 2009)………………………… 24

*Schnall v. Hertz Corp.*
  78 Cal. App. 4th 1144, 1167 (2000)……………………………………… 26

*Scripps Clinic v. Superior Court*
  108 Cal. App. 4th 917, 939 (2003) …………………………………… 27

*Shoemaker v. County of Los Angeles*
  37 Cal. App. 4th 618, 633 (1995) …………………………………… 28

*Sullivan v. Wash. Mut. Bank, FA*
  2009 WL 3458300, at *4-5 (N.D. Cal. Oct. 23, 2009)…………………….. 24

*Winter v. Natural Res. Def. Council*
  555 U.S. 7, 20 (2008) ………………………………………………... 4

*Wrobel v. S.L. Pope & Associates,*
  2007 WL 2345036, at *1……………………………………………28, 29


**Statutes**

*Federal Rule of Civil Procedure* 65……………………...…………………14, 15

*Business and Professions Code* section 17200……………….5, 14, 19, 20, 23, 25, 27

*Business and Professions Code* section 17203 …………………………….…20, 23

*Business and Professions Code* section 17204……………………………..…20, 24

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

*Civil Code* section 2920.5……………………………………………....    12

*Civil Code* section 2923.6………………………5, 10, 12,13,15,16, 17,18, 19, 20, 21, 23

*Civil Code* section 2924……………………………………………    5, 20

*Civil Code* section 2924.15……………………………………………    15

*Civil Code* section 2924g…………………………………….. ….    14

*Civil Code* section 3387…………………………………………….    29

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   RELIEF REQUESTED

Plaintiffs hereby seek an order of this court to stop the sale of their home as set forth below. The primary purpose of this hearing is to maintain the *status quo* pending a full hearing on the merits. Plaintiffs are likely to succeed on the merits and will suffer immediate, irreparable harm if Defendants are not enjoined from proceeding with pending the foreclosure sale of the Subject Property which is set for **June 14, 2013.**

Plaintiffs request relief in either a Temporary Restraining Order or a Stay Order as an alternative to preserve the status quo and prevent the irreparable loss of the Subject Property before judgment.   Plaintiffs are likely to succeed on the merits, will suffer irreparable harm in the absence of the relief and the balance of equities tips in Plaintiffs' favor. *See Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008).   With regards to foreclosure related cases, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims."   *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011).   "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id.* at 791 Quoting *In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1057 (9th Cir. 2008).

Moreover, the Ninth Circuit holds that a plaintiff is entitled to injunctive relief if he satisfies either of two tests: (1) the *Winter* factor test; or (2) the "sliding scale" test, also

referred to as the "serious questions" test. *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). The sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations. *Se id.* 632 F.3d at 1134-35. Here, the potential for harm to the Plaintiffs is great and Plaintiffs have made a sufficient showing of a likelihood of success of the merits.

## II. <u>STATEMENT OF THE CASE</u>

Plaintiffs filed a complaint against BAYVIEW LOAN SERVICING, LLC. ("BAYVIEW") and AZTEC FORECLOSURE CORPORATION ("Defendants") for violations of *California Civil Code* §2923.6, *California Civil Code* §2924, Violations of *California Business & Professions Code* §17200, Negligence and a demand for Accounting. The case was filed on May 9, 2013. Plaintiffs move *ex parte* for a Temporary Restraining Order to restrain and enjoin Defendants from proceeding with any foreclosure activity relating to the real property commonly known **8248 Rockview Drive, El Cajon, CA 92021** (Hereinafter, "Subject Property")

In 2007, Plaintiffs entered into a written loan agreement for a sum of $330,000 (the "Loan"), secured by the Subject Property through a Deed of Trust recorded November 15, 2007, then and now Plaintiffs' principal residence.

Plaintiffs performed dutifully under the Loan, as required, until 2011 when, due to the downturn in the economy, Plaintiff suffered a temporary financial setback. Thereafter, she made some of the monthly mortgage payments under the terms of the Loan, but was unable to make all the required payments.

Unbeknownst to Plaintiffs, in the process of refinancing their home, Plaintiffs were put into a negative amortization loan that Plaintiffs could not afford. Plaintiffs' loan broker misrepresented and misinformed Plaintiffs of the terms of the monthly payments, and as the payments continued to increase over time and deferred interest piled on to the Loan balance, Plaintiffs knew they would not be able to keep up with monthly payments for very long.

Soon thereafter, Plaintiff Lee Ware's business suffered a significant financial setback, due to the poor economy, and as a result, Plaintiffs' income had significantly decreased. At that point, Plaintiffs had no choice but to use the money in their savings and investments accounts to remain current on the Loan.

Over the next year or so, Plaintiffs continued to make mortgage payments under the Loan, sometimes falling behind on one (1) or two (2) months, until late 2010, when Plaintiffs exhausted through their savings and were forced to stop making the monthly payments.

In an effort to prevent foreclosure proceedings, Plaintiffs contacted their lender at the time, Virtual Bank, a Division of Lydian Private Bank, to inquire about a loan modification option.

Virtual Bank, through its representative, informed Plaintiffs that they "qualified" for a loan modification, and promised Plaintiffs that if they submitted a loan modification application, then no foreclosure activity would take place while their application was in review. This representation led Plaintiffs to believe that they

would qualify for a loan modification, that they would secure a new affordable monthly mortgage payment, and that they would retain the Subject Property.

Immediately thereafter, Plaintiffs applied for a loan modification and submitted a complete application, along with all necessary paperwork, directly to Virtual Bank, via facsimile.

Over the next few months, Plaintiffs consistently received letters from Virtual Bank requesting financial documents, and as requested, Plaintiffs continued to submit and resubmit updated financial documents and followed-up weekly with Virtual Bank.

However, on or around April 4, 2011, while Plaintiffs were "in review" and submitting financial documents as requested by Virtual Bank, Defendants executed a Notice of Default and Election to Sell Under Deed of Trust (the "NOD" or "Notice of Default") on the Subject Property. Attached as **Exhibit A** is a true and correct copy of the NOD, recorded on April 5, 2011.

Plaintiffs contacted Virtual Bank, and its representative advised Plaintiffs that the NOD would be held in "suspense," and for Plaintiffs to continue submitting their updated financial documents and to continue working with Virtual Bank during the loan modification process because a loan modification was imminent. Plaintiffs justifiably relied on Virtual Bank's representations and continued the loan modification process.

However, as Plaintiffs' financial situation continued to worsen and Plaintiffs

were desperate to avoid foreclosure, Plaintiffs had no choice but to file for Chapter 13 Bankruptcy in or around July 2011, and a Chapter 13 Plan was confirmed in or around February 2012.

In or around October 2012, Sabadell United Bank, N.A., as Receiver for Virtual Bank, a Division of Lydian Private Bank, filed a Motion for Relief from Stay.

At that point, Plaintiffs reasonably believed that foreclosure proceedings would commence, and in an effort to avoid foreclosure, Plaintiffs decided to pursue a short sale. In or around November 2012, Plaintiffs' realtor drafted a full Residential Listing Agreement ("Agreement"), in which Plaintiffs were to short sell the Subject Property to Pacific Sotheby's International Realty. All of the parties to the transaction signed the Agreement on or around November 13, 2012. Attached as **Exhibit B** is a true and correct copy of the Agreement.

On or about February 12, 2013, the Motion for Relief from Stay was granted and the Court Order was filed and mailed to Plaintiffs.

On or about March 11, 2013, Defendants executed and recorded a Notice of Trustee's Sale (the "NTS" or "Notice of Sale"), against the Subject Property. Attached as **Exhibit C** is a true and correct copy of the NTS.

Immediately thereafter, Plaintiffs contacted Virtual Bank to inquire as to Plaintiffs' loss mitigation options and specifically, a loan modification; however, Virtual Bank was not willing to help Plaintiffs modify their loan, but its representative advised Plaintiffs that with their Residential Listing Agreement already

done and signed by all parties, Plaintiffs' qualified for a short sale and that a short sale was Plaintiffs' best option.

Plaintiffs justifiably relied on Virtual Bank's representations and submitted an application for a short sale to Virtual Bank, via facsimile, on or around March 18, 2013.

On or about April 3, 2013, Plaintiffs received a letter, informing them that Defendant Bayview Loan Servicing, LLC, acting as agent on behalf of Virtual Bank, had received Plaintiffs' request to be offered a foreclosure alternative. The letter further stated that within five (5) days, Bayview would review the documentation Plaintiffs provided and it would contact Plaintiffs, and it would take approximately thirty (30) days to make a decision regarding Plaintiffs' request.

However, on or about April 9, 2013, Plaintiffs received a letter from Defendant Bayview, informing Plaintiffs that the review was complete and that Plaintiffs were ineligible for Bayview's programs because it serviced Plaintiffs' loan on behalf of an investor or group of investors that had not approved a short sale of the Loan. However, no further explanation was given. Attached as **Exhibit D** is a true and correct copy of the denial letter.

The letter **did not include** the specific reasons for the investor disallowance or a description of other foreclosure prevention alternatives for which Plaintiffs may have been eligible AND a list of steps Plaintiffs needed to take in order to be considered for those options. These are clear violations of the Homeowner's Bill of

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Rights, specifically Civil Code §2923.6(f).

Thereafter, on or about April 15, 2013, Plaintiffs received a Notice of Postponement of Foreclosure Sale from Defendant Aztec Foreclosure Corporation, advising Plaintiffs that the foreclosure sale had been postponed to May 14, 2013. Attached as **Exhibit E** is a true and correct copy of the Notice.

Plaintiffs attempted to contact Defendants Bayview and Aztec Foreclosure several times to get an explanation regarding their short sale denial and what other options Plaintiffs had to prevent foreclosure, as their financial circumstances had changed. However, they were unable to speak to the same representative on the telephone more than once, and ultimately they were unable to speak to anyone who knew anything about Plaintiffs' file and who was willing to help them or provide them with insightful information.

At this time, Plaintiffs have been unable to negotiate a mortgage payment that they can afford and have been prevented from curing the default because of the substantial arrearages, which include unnecessary marked up fees added to the loan balance.

Plaintiffs are in possession of the Subject Property and no Trustee's sale has occurred; however, a Trustee's sale is currently scheduled for **June 14, 2013. As a result, the instant action became necessary.**

Defendants, acting as lenders, mortgage servicers, trustees, and/or beneficiaries, received, and continue to receive, a financial incentive on each loan modification or

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

short-sale application a borrower submits. Because of this type of incentive, Defendants benefit from allowing Plaintiffs' request to drag on, rendering the financial documents submitted in support thereto to become stale; thus, requiring Plaintiffs, and other similarly situated borrowers to restart the application process, rather than actually reviewing Plaintiffs' application.

The Defendants' acts and material omissions herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice and disclosure rights.

Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

Defendants are corporate employers. As such, their officers, directors, and/or managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

Plaintiffs are ready, willing, and able to enter into a loss mitigation program that is affordable for Plaintiffs and more profitable to Defendants than a foreclosure of the Subject Property, and Plaintiffs are ready, willing, and able to make such payments at the times required.

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

11

## III.   ARGUMENT

### A. Just Cause Exists to Stop Enjoin the Sale Because of Defendants' Violations of the Homeowner's Bill of Rights

Plaintiffs have standing to bring this suit because they are "borrowers" under the deed of trust secured by the Subject Property.   Pursuant to *Civil Code* §2920.5, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through his or her mortgage servicer". (*Civil Code* §2920.5 (c)).

As alleged in the complaint, **Plaintiffs have experienced a material change in their financial circumstances** since the last time Plaintiffs submitted a complete application for a foreclosure prevention alternative. Plaintiffs, through their attorney have documented and submitted these changes to Defendants, via facsimile, in a letter dated May 8, 2013. A true and correct copy of this letter to Defendants informing them of Plaintiffs' financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as **Exhibit "F".**

Plaintiffs' change in financial circumstances are a result of increase in expenses. Defendant Bayview is in possession of all material documents supporting such change. Pursuant to *Civil Code* §2923.6 Defendant is mandated to review Plaintiffs' modification request for two (2) reasons: Plaintiffs  were never fairly considered, and Plaintiffs' income has changed and such information regarding the change has been

submitted to Bayview.

As set forth herein, pursuant to the provisions of Civil Code §2923.6, under the California Homeowner's Bill of Rights, if there has been a material change in the borrower's financial circumstances, and that change has been documented and submitted to the mortgage servicer, the mortgage servicer must evaluate the borrower's complete application. In addition, §2923.6 requires that *all foreclosure activity must cease while a review of the application is pending*.

Pursuant to the provisions of *Civil Code* §2923.6 and the Homeowner's Bill of Rights, if there has been a <u>material change</u> in the borrower's financial circumstances, and that change has been documented and submitted to the mortgage servicer, the mortgage servicer or lender is obligated to evaluate the borrower for a foreclosure alternative, including but not limited to a loan modification. In addition, §2923.6 requires that all foreclosure activity must cease once notice of this change has been given and a review of the new financial circumstances is evaluated. A true and correct copy of all relevant *Civil Code* sections under the Homeowner's Bill of Rights is attached and incorporated hereto as **Exhibit "G"**.

According to this code section, Bayview must not only review Plaintiffs for a foreclosure alternative, but it may not continue foreclosure activity on the subject property until after the optional appeal of the written denial, as set forth in *Civil Code* §2923.6(c) (**Exhibit "G"**, pp. 12-13).

Continuing with foreclosure proceedings of the Subject Property while Plaintiffs

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

are under mandatory review is also a violation of *Bus. And Prof. Code* §17200, as an unlawful and unfair business practice.   Pursuant to the provisions of *Civil Code* §2924g(c)(1)(A), a foreclosure sale may be properly postponed by order of a Court of competent jurisdiction, including this Court.

## B. The Complaint and the Basis for Injunctive Relief

Plaintiffs seeks a Temporary Restraining Order or in the alternative a stay order on the grounds that Defendants' foreclosure on the Subject Property violates California *Civil Code* §§2923.6, 2924, California *Business and Professions Code* §17200, and other statutory and common law in effect.

As permitted by *Federal Rules of Civil Procedure* 65, Plaintiffs have alleged several clear and convincing causes of action in which Plaintiffs are likely to succeed on. Defendants' violations of *Civil Code* §2923.6 and fraudulent, unfair and unlawful business practices under *Business and Professions Code* §17200 are factually supported through evidence and testimony and will lead to a final ruling for Plaintiffs.

Defendants are unlawfully proceeding with a foreclosure sale of the Subject Property and unless and until Defendants are enjoined and restrained by order of this Court, Plaintiffs will suffer irreparable harm. The sale of Plaintiffs' home will cause immediate, great and irreparable injury to Plaintiffs and their family. The foreclosure sale of the Subject Property will reduce the value of the property and will eliminate Plaintiffs' interest in the Subject Property. On these grounds alone, this Court may grant the TRO pursuant to *FRCP* 65.

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

14

Pursuant to *FRCP* 65, the court may grant injunctive relief in order to prevent "immediate and irreparable injury." *Fed. R. Civ. P.* 65(b)(1)(A). Temporary Restraining Order is vital to postpone and stop the imminent sale of the Subject Property. Pursuant to *Civil Code* §2924.15, *Civil Code* §2923.6 applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. Here, the Subject Property contains no more than four (4) dwelling units (a single family residence) and is Plaintiffs' principal residence. Plaintiffs squarely satisfy these requirements; therefore, pursuant to *Civil Code* §2923.6, <u>Plaintiffs are entitled to an order halting the scheduled foreclosure sale</u>.

Plaintiffs do not have an adequate remedy at law for the harm threatened by Defendants' wrongful conduct. A foreclosure sale of the Subject Property will unjustly deprive Plaintiffs of property rights and would reduce/eliminate any equity interest in the home.

## 1. <u>Violation(s) of California Civil Code §2923.6</u>

Plaintiffs desperately request this Court to issue a TRO because Plaintiffs demonstrate that Defendant Bayview failed to comply with the mandatory provisions of *Civil Code* §2923.6, and the postponement of the foreclosure sale is the proper remedy.

The intent of the California legislators in enacting *Civil Code* §2923.6 was to address the consequences of the subprime mortgage crisis leading to declining real

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

15

property values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective of the *Code* was to make sure lenders, loan servicers, and their agents were communicating and working with borrowers in default to assess the borrowers' financial situation and discuss foreclosure alternatives **before** a foreclosure is started by recording a notice of default. <u>The intent of the legislature is clear and the requirements that it has imposed are by no means arbitrary.</u>

Defendants' failure to comply with *Civil Code* §2923.6 directly undermines the intent behind the statute. This failure to adhere to the statute renders it meaningless and, if not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless. As a result, Defendants are liable to Plaintiffs for any and all statutory and/or actual damages which have resulted from their conduct

*Civil Code* §2923.6(g) mandates the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, **unless there has been a material change in the borrower's financial circumstances** since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer. (Exhibit **"G"**, pg 12).   Plaintiffs have not been fairly evaluated for a foreclosure alternative and have experienced a "material change in their financial circumstances".

As alleged, Plaintiffs' income and expenses have materially changed since the last time Plaintiffs submitted a complete application for a foreclosure prevention

alternative. Specifically, Bayview never fairly evaluated or afforded Plaintiffs a fair opportunity to be evaluated for a foreclosure prevention alternative, as alleged in the Complaint and set forth herein, and there has been a material change in Plaintiffs' disposable income, and that change has been documented and submitted to Defendants via facsimile.   A true and correct copy of the May 8, 2013 letter to Defendants informing them of Plaintiffs' material financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as Exhibit **"F"**.

Accordingly, under *Civil Code* §2923.6, Bayview must evaluate Plaintiffs for a foreclosure alternative, including a loan modification.  Defendants may NOT continue with or conduct any foreclosure activity, while a review of the loan modification application is pending.

Plaintiffs request that this Court grant this application for a TRO because Plaintiffs can show that Defendant, Bayview failed to satisfy the mandatory provisions of *Civil Code* §2923.6, and the postponement of the foreclosure sale is the only proper remedy.

a. Improper Denial

*Civil Code* §2923.6(f) states that following the denial of a first lien loan modification application, the mortgage servicer is obligated to send a written notice to the borrower identifying the **reasons for denial**, including the following:

a. The amount of time from the date of the denial letter in which the borrower may request an appeal and instructions regarding how to appeal the denial;

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
17

b. If the denial was based on investor disallowance, the specific reasons for the investor disallowance;

c. If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the NPV and a statement that the borrower may, upon written request to the servicer, obtain ALL of the inputs used in the NPV calculation;

d. If applicable, a finding that the borrower was previously offered a loan modification and failed to successfully make payments under the terms of the modified loan; and

e. If applicable, a description of other foreclosure alternatives for which the borrower may

be eligible AND a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure alternative, information necessary for the borrower to complete that foreclosure alternative.

In this case, April 9, 2013, Bayview's letter stated that the review was complete and that Plaintiffs were ineligible for any programs because it serviced our loan on behalf of an investor or group of investors that had not approved a short sale of the Loan. No further explanation was given Defendants' denial letters sent to Plaintiffs failed to meet the above requirements. The letter does not state specific reasons for the denial of Plaintiffs' request for loan modification and does not include the inputs used to calculate NPV or variables used to make a determination denying the short-sale.

Plaintiffs allege that if this denial was based on the investor's disallowance to provide Plaintiffs with a foreclosure alternative, the denial letter should, but does not

include the criteria for the investor guidelines in order to obtain a loan modification or complete a short-sale. Pursuant to *California Civil Code* §2923.6(f) (2), if a denial is based on the investor's disallowance, such <u>denial letters must state the specific reasons for the investor disallowance.</u>

Despite being put on notice of these facts, Defendants intend to continue with the scheduled foreclosure activity on the Subject Property and will hold a Trustee sale of the Subject Property that is currently scheduled for **June 14, 2013. This is a blatant violation of *Civil Code* §2923.6.**

Therefore, pursuant to the Homeowner's Bill of Rights, and specifically *Civil Code* §2923.6, the foreclosure sale date of the Subject Property must be enjoined, and Plaintiffs must be evaluated for a foreclosure prevention alternative or a loan modification.

As a result of Defendants' wrongful acts and omissions, Plaintiffs have been prejudiced by Defendants' acts and omissions. The foreclosure process instituted by Defendants must cease and Defendants must comply with the mandatory provisions under *Civil Code* §2923.6.

Plaintiffs were forced to file a Complaint, and seek a court order enjoining Defendants' conduct and stop the imminent sale of a family home. As such, Plaintiffs submit that they have good cause to stop the foreclosure sale

### 2. <u>Violation of California Business and Professions Code §17200 *et seq.*</u>

Plaintiffs plea to this Court to issue a TRO based on conduct which clearly

violates California *Business and Professions Code* §17200, as "unlawful, unfair and/or fraudulent business act or practices". Plaintiffs' §17200 claim is grounded on Defendants' violations of *Civil Code* §2923.6 and §2924, *et seq* and unfair business practices.

This Court has jurisdiction over this action pursuant to *Bus. and Prof. Code* §17200, *et seq.,* specifically *Bus. and Prof. Code* §17203, which provides that any person or entity who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the Court may make such orders or judgments, including the appointment of a receiver, as may be necessary, to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and *Bus. and Prof. Code* §17204, which provides that actions for any relief pursuant to Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association or by any person acting for the interests of itself, their members, or the general public.

*Bus. and Prof. Code* §17200 also prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set forth herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with awareness of its effect, and was done to induce Plaintiffs to pay the marked-up and/or unnecessary fees for default-related services.  Moreover, Defendants

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

20

recorded foreclosure related documents into public records without the power or authority to do so.

Specifically, as fully set forth herein and in the Complaint, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties, and related matters, by, among other things:

a. Recording the Notice of Default, the Notice of Sale, and conducting a Trustee's sale without complying with *Civil Code* §2923.6, by failing to evaluate Plaintiffs' application, or affording Plaintiffs a fair opportunity to be evaluated for a loan modification, after a documented **material change of financial circumstances**;

b. Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

c. Misrepresenting the foreclosure status to Plaintiffs regarding the property; and

d. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs; account.

In addition, in the course and conduct of its loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and they failed to disclose the nature of the charges and fees assessed. Defendants concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiffs believed they were obligated to pay the amounts specified in Defendants' correspondences relating to default-related services.

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

21

Plaintiffs relied on a reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans; as a result, Plaintiffs relied on Defendants' disclosures about the fees appearing on statements, reasonably believing the "Other Charges," "Other Fees," or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments. Defendants further conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by [borrowers'] Note and Security Instrument," or that they are "[i]n accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiff, she would have been aware of the mark-ups and unnecessary nature of the fees, and would have disputed these charges.

Furthermore, by offering loan modification assistance and leading borrowers to believe such assistance is being considered while the foreclosure process is underway is an irreparable injury to Plaintiffs after Plaintiffs have **relied on** Defendants' offers to modify their loan. This has prevented Plaintiffs from pursuing other workout options, such as deed in lieu of foreclosure, short sale, and the like. In fact, the false promises and false statements of Defendants, and each of them, were designed to unfairly prejudice Plaintiffs and profit from their loss.

These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate

behavior. Defendants' actions are contrary to public policy; as such, the California State legislature enacted the Homeowner's Bill of Rights, including *Civil Code* §2923.6, as an emergency act, so unlawful foreclosures could be avoided.

Defendants' acts and practices constitute "unfair" and "unlawful" business acts under *Bus. and Prof. Code* §17200, *et seq.*, in said acts and practices offend public policy and are substantially injurious to Plaintiffs. These unfair and unlawful acts and practices provide no utility, except hearty profits; clearly less utility to outweigh the substantial harm to Plaintiffs.

Plaintiffs allege that these acts are a serious threat to Plaintiffs, because they allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property, transfer title, and to cause the imminent eviction of Plaintiffs from the home. Because of Defendants' illegal actions, Plaintiffs will be forced out of the Subject Property, and such eviction will undoubtedly cause Plaintiffs immediate and irreparable injury.

As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices, Plaintiffs have suffered ascertainable losses; therefore, Defendants must be enjoined from continuing such practices, pursuant to *Bus. and Prof. Code* §17203 & §17204.

**a. Standing**

Standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing under the UCL, a plaintiff must sufficiently allege that

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

23

(1) she has lost "money or property" sufficient to constitute an "injury in fact" under Article III of the Constitution, and  (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Birdsong v. Apple, Inc.*, 590 F.3d 959-60 (9th Cir. 2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-56 (2008).

Under the UCL "[a]n injury to a tangible property interest, such as money, generally satisfies the 'injury in fact' element for standing." … "injury in fact" … [means] … "'an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" … "'Injury-in-fact is not Mount Everest. "The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant "allege some specific, 'identifiable trifle' of injury".' " *Hale, supra*, 183 CA4th at 1381-84 (internal citations omitted.) The term "imminent" is defined as "ready to take place," "hanging threateningly over one's head," and "menacingly near." (Id. at 1384.)

Being at risk of foreclosure would constitute injury in fact. [See *Sullivan v. Wash. Mut. Bank, FA*, 2009 WL 3458300, at *4-5 (N. D. Cal. Oct.23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under § 17200); *Rabb v. BNC Mortgage, Inc.*, 2009 WL 3045812, at *2 (C.D.Cal. Sept. 21, 2009).

Plaintiffs allege that Defendants' actions have clouded their title, and by charging unnecessary default related fees have caused them to lose equity interest in the subject property. As discussed in the complaint, Plaintiffs' losses derive from Defendants' collection of payments, adding improper charges to Plaintiffs' balance, and unreasonably delaying Plaintiffs' loan modification and short-sale applications caused Plaintiffs to lose equity interest in the Subject Property. These injuries are monetary and may ultimately result in the loss of Plaintiffs' home. Being charged for marked-up and unnecessary fees would constitute injury in fact. [See *Hale v. Sharp Healthcare* (2010) 183 CA4th 1373, 1383-84 (uninsured patient's UCL claim against hospital and its owner adequately alleged standing where plaintiff alleged that she was promised services at regular rates but was charged grossly excessive rates. Although plaintiff paid only $500 of her $14,448 bill; patient faced at least an imminent invasion or injury to a legally protected interest.)]

### b. Unlawful, Unfair or Fraudulent Conduct

Under the UCL, there are three varieties of unfair competition—business acts or practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability," each offering "an independent basis for relief." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Furthermore, a claim under § 17200 is "derivative of some other illegal conduct or fraud committed by a defendant, and '[a] plaintiff must state with reasonable

particularity the facts supporting the statutory elements of the violation." *Id. Khoury*, 14 Cal. App. 4th at 619.

A business practice is "fraudulent" within the meaning of §17200 if "members" of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.* (1983)35 C3d 197, 211, 197 CR 783, 791; accor, *Kasky v. Nike, Inc.* (2002) 27 C4th 939, 119 CR2d 296; and *Prata v. Sup.Ct.* (2001) 91 CA4th 1128, 1144, 111 CR2d 293, 308. Common law fraud requires proof of five elements; by contrast, under the *Children's Television* test, a plaintiff can prove a prima facie case that a business practice is "fraudulent" without having to prove intent, scienter, actual reliance, or damage. All that is required is proof that "members of the public are likely to be deceived." *Schnall v. Hertz Corp.* (2000) 78 CA4th 1144, 1167, 93 CR2d 439, 456-457; *People v. Orange County Charitable Servs.* (1999) 73 CA4th 1054, 1076, 87 CR2d 253, 268. If anything, the prohibition against "fraudulent" business is broad and it reaches practices that do not involve advertising. See *Allied Grape Growers v. Bronco wine Co.* (1988) 203 CA3d 432, 249 CR 872. And that involve no untrue statement. Here, Defendants publicly agreed to stop the practice of "dual tracking" and specifically stated to Plaintiffs that no foreclosure activity would ensue while they're being considered for a foreclosure alternative.

///

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

26

### c. <u>Defendants' Thoughtless March to Foreclosure on Plaintiff's Property is Sufficient to Establish Unfair and/or Unlawful Conduct.</u>

"Unfair" conduct under Section 17200 has been commonly defined as conduct that "offends an established public policy or… is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinc v. Superior Court,* 108 Cal. App. 4th 917, 939 (Cal. App. 2003). Here, Plaintiffs' claims support a finding that Defendants' activities were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs, not to mention against public policy. Here, Defendants induced Plaintiffs to engaged in loan modification review leading them to believe they will obtain a monthly payment that is lower than the amount due at the time. However, Defendant Bayview failed to adequately review Plaintiffs' application and started foreclosing on the Subject Property prior to reaching a proper decision. Defendants also engaged in "Dual-Tracking", a grossly unfair practice that they had specifically been reprimanded for and committed to halt during the recent national mortgage settlements.

Here, Defendants acted "unfairly" and "unlawfully" because initiating foreclosure activity, in direct violation to the Home Owners' Bill of Rights, and their express promises to Plaintiffs further reaffirm Plaintiffs' claims of unfair conduct under the UCL.

### IV.   <u>BALANCE OF HARMS</u>

The harm Plaintiffs will suffer if the Subject Property is sold in foreclosure outweighs any harm to the Defendants. If Plaintiffs succeed on their case, they will

remain the owner of the property at issue. If not, Defendants would be free to continue with their foreclosure proceedings and recoup any claimed losses.

A Plaintiff seeking injunctive relief is required to demonstrate that she will suffer immediate and irreparable injury due to the inadequacy of other legal remedies. *People ex rel. Gow v. Mitchell Brothers' Santa Ana Theater* (1981), 118 Cal.App.3d 863. Irreparable harm is often related to an "inadequate legal remedy," where relief cannot be granted unless a party is injured in a way which cannot later be repaired. *Id* at 870-71. In "evaluating interim harm, the trial court compares the injury to Plaintiff in the absence of an injunction to the injury Defendant is likely to suffer if an injunction is issued." *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 633. The harm Plaintiff will suffer if the Subject Property is wrongfully foreclosed on is sever and the resulting eviction from their home is irreversible.

In addition, the threat of "irreparable harm" must be imminent, as opposed to a mere possibility of harm sometime in the future, in that the threat "must be supported by actual evidence that there is a realistic prospect that the party enjoined intends to engage in the prohibited activity." *Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069. Here the harm is imminent because the foreclosure sale of the Subject Property is scheduled to take place on June 14, 2013.

Furthermore, the Court in *Nichols v. Deutsche Bank Nat. Trust Co.* 2007 WL 4181111, at *3, held that **"the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."** Similarly, in *Wrobel v. S.L. Pope & Associates*, 2007

WL 2345036, at *1, the Court found that **"losing one's home through foreclosure is**

**an irreparable injury."** Moreover, pursuant to *Civil Code* §3387, all real property is

deemed "unique," so any injury/loss cannot be compensated in damages, and injunctive

relief is therefore readily granted.

## V. THE PUBLIC INTEREST

Plaintiffs submit that public interest favors the granting of the requested relief.

The public has an interest in the orderly administration of justice with respect to this

transaction which will be defeated if the relief sought is not granted.  Public policy

favors the proper adjudication of claims of predatory lending against homeowners.

Additionally, public policy dictates that the Plaintiffs should not be rendered homeless

without a full adjudication of their case on the merits.

The foreclosure activity in California has adversely affected property values and

resulted in less money for schools, public safety, and other public services. According

to the Urban Institute, every foreclosure imposes significant costs on local governments,

including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in

local government costs. As a direct, proximate, and foreseeable result of the unlawful

business acts or practices of Defendants, Plaintiff and the general public have been

injured, and Plaintiff is entitled to relief, including full restitution and/or disgorgement

of all revenues, earnings, profit, compensation, and benefit, which may have been

obtained by Defendants as a result of such business acts or practices.

Currently there is an extremely high rate of foreclosures in Southern California

real estate market. As a result, foreclosures contribute to neighborhood blight and bring other property owners values down. The foreclosure also foster crime as gangs and drug dealers move into the abandoned homes. A foreclosure sale of Plaintiffs' home will add to these problems, which are not in the public's interest.

The California Legislature has found and declared "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution". In addition, "These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. This foreclosure can and should be avoided.

## VI.   NO BOND SHOULD BE REQUIRED

In this case, to require a bond in any substantial amount is effectively to deny Plaintiffs the requested relief. Defendants are already protected by their lien security interests in Plaintiffs' home, so additional security in the form of a bond should be unnecessary. Should this court find it proper to order an undertaking, Plaintiffs propose that the amount be equal to the monthly mortgage payments due under the note, payable on a monthly basis.

## VII.   CONCLUSION

As stated herein, Plaintiffs hereby plead to this court to stop the unlawful sale of their home. Plaintiffs have shown that the issuance of a Temporary Restraining Order

is justified because of high likelihood of success on the merits, the irreparable harm, and the insignificance of any harm or benefit to Defendants.  The issuance of TRO will also serve the public's interest in maintaining safe neighborhoods, avoiding further decline in property values and generation of property taxes for the city and county.

Dated:  June 12, 2013          LAW OFFICES OF JOSEPH R. MANNING, JR.
                               A PROFESSIONAL CORPORATION

                               By:    /S/  Joseph R. Manning, Jr.
                                    Joseph R. Manning, Jr., Esq.
                                    Babak Hashemi, Esq.
                                    Attorneys for Plaintiffs

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

## DECLARATION OF BABAK HASHEMI

I, Babak Hashemi declare as follows:

1.   I am a resident of the County of Orange.  I am over the age of 18.

2.   I am of counsel to the Law Offices of Joseph R. Manning, Jr., APC and associate counsel of record in the above-referenced action.

3.   I have personal knowledge to the facts herein, and if called as a witness, I would competently testify to their veracity in court.

4.   On June 11, 2013, my office conferred with counsel for Defendants in order to maintain status quo by requesting postponement of the scheduled foreclosure and initiating foreclosure alternative review procedures based on *California Civil Code* §2923.6.

5.   The scheduled trustee date of the Subject Property remains active for June 14, 2013 and no foreclosure alternatives have been discussed between the parties.

6.   This office provided written notice of this ex parte hearing to Defendants' Counsel on June 12, 2013.  A true and correct copy of said notice is attached hereto as **Exhibit "H"**.

Executed on June 12, 2013, at Newport Beach, California.       I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

                                        __/S/  *Babak Hashemi*
                                        Babak Hashemi, Esq.

Case No. 13 CV 01310

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER/STAY AND REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**
32

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On June 13, 2013 I served the true copies of the foregoing document described as **PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND [PROPOSED]ORDER** on the interested parties in this action, addressed as follows:

**Served Electronically via Court's CM/ECF System:**
*Attorneys for Defendant*
Nicole S. Dunn
Wright Finlay & Zak, LLP.
4665 MacArthur Court, Suite 200

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

This declaration is executed in Newport Beach, California, on **June 13 2013.**

_____
Janet Harris