# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE J. WARE, an individual, and IRMA WARE, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>BAYVIEW LOAN SERVICING, LLC, AZTEC FORECLOSURE CORPORATION, and DOES 1-100, inclusive,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 13-CV-1310 JLS (NLS)<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Presently before the Court is Plaintiffs Lee J. Ware and Irma Ware's ("Plaintiffs") *ex parte* motion for a temporary restraining order or stay and an order to show cause why a preliminary injunction should not issue. (ECF No. 4.) Plaintiffs seek to prevent Defendant Bayview Loan Servicing, LLC ("Defendant") from foreclosing on Plaintiffs' home throughout the litigation. For the reasons stated below, the Court **DISSOLVES** its June 13, 2013 Order and **GRANTS** Plaintiffs' request for a preliminary injunction.

## BACKGROUND

Plaintiffs bring this action against Defendants Bayview Loan Servicing, LLC and Aztec Foreclosure Corporation ("Defendants") asserting four causes of action: (1) violations of California Civil Code § 2923.6; (2) violations of California Business and Professions Code § 17200 et seq.; (3) negligence; and (4) accounting. (Underlying Complaint, ECF No. 1-1.)

1    This action concerns the disputed ownership and loan status of the property at 8248 Rockview Drive, El Cajon, CA 92021 (the "Property"). Sometime in 2007, Plaintiffs entered into a written loan agreement for the sum of $330,000, secured by a deed of trust to the Property. (ECF No. 4 at 9.) Subsequently in 2010, Plaintiffs failed to make all payments required under the loan agreement. (*Id.* at 9-10.) Around this time, Plaintiff applied for a loan modification with Virtual Bank. (*Id.* at 11.) Plaintiffs were allegedly informed that no foreclosure activity would take place while their application was in review. (*Id.* at 10.)

On or around April 4, 2011, Defendants allegedly executed a Notice of Default and Election to Sell Under Deed of Trust ("NOD") on the Property. (ECF No. 4-1.) At this time, Plaintiffs' loan modification was allegedly "in review." (ECF No. 4 at 11.) Virtual Bank allegedly made representations to Plaintiff at this time that the loan modification was "imminent." (*Id.*)

In or around July 2011, Plaintiffs filed for Chapter 13 bankruptcy. (*Id.* at 12.) A Chapter 13 Plan was confirmed in or around February 2012. In or around October 2012, Sabadell United Bank, N.A., as Receiver for Virtual Bank, filed a motion for relief from stay. (*Id.*) This motion was granted on or about February 12, 2013. (*Id.*)

On March 13, 2013, foreclosure trustee Aztec Foreclosure Corporation recorded a Notice of Trustee's Sale ("NOS"), setting the foreclosure sale date for April 3, 2013. (ECF No. 4-3.) At this time, Virtual Bank allegedly advised Plaintiffs that a short sale was Plaintiffs' best option, and Plaintiffs submitted an application for a short sale on or around March 18, 2013. (ECF No. 4 at 12-13.)

On April 3, 2013, Plaintiffs received a letter informing them that Defendant Bayview Loan Servicing, LLC ("Bayview"), acting as agent on behalf of Virtual Bank, would review Plaintiffs' request to be offered a foreclosure alternative. On or about April 9, 2013, Plaintiffs received a letter from Bayview stating that Plaintiffs were ineligible for their foreclosure prevention programs because a short sale had not been approved by an investor or group of investors. (ECF No. 4-4.) On or about April 15,

1  2013, Plaintiffs received a notice that the foreclosure sale had been postponed to May 14, 2013.  (ECF No. 4-5.)  Plaintiffs were allegedly unable to make any constructive contact with Defendants regarding their short sale denial and potential alternative options to avoid foreclosure.  (ECF No. 4 at 14.)  On May 8, 2013, Plaintiffs sent a letter to Defendants informing them of a material change in their financial circumstances.  (ECF No. 4-6.)

On May 9, 2013, Plaintiffs filed the underlying complaint.  (ECF No. 1-1.) Plaintiffs' complaint asserts four causes of action, none of which arise under federal law.  Plaintiff ultimately seeks damages, including punitive damages and interest, various injunctive relief, disgorgement of all amounts wrongfully taken by Defendants, and reasonable attorney's fees and costs of suit.  (ECF No. 1-1 at 36-37.)  On June 6, 2013, Defendants removed the action from the Superior Court of California for the County of Los Angeles alleging diversity jurisdiction. (ECF No. 1.)  On June 13, 2013, Plaintiffs filed the instant ex parte motion.  (ECF No. 4.)

After reviewing the materials submitted by the parties, the Court issued an Order enjoining Defendant from taking any steps to deprive Plaintiffs of their residence in the Property until the Court could hold a preliminary injunction hearing.  (ECF No. 4.)  At the June 27, 2013 preliminary injunction hearing, the Court determined that further briefing by both parties was necessary to address several issues, including whether Plaintiffs' 2011 loan modification application was still pending.  (ECF No. 15.) Accordingly, the Court issued an Order continuing the hearing to August 15, 2013, and setting a briefing schedule for supplemental briefing.  (*Id.*)

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

Although all four factors must be met, they operate on a sliding scale. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* at 1131.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citation omitted). The typical preliminary injunction is prohibitory, and seeks to "maintain the status quo pending a trial on the merits." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006); see also *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-89 (9th Cir. 2009). A mandatory injunction, in contrast, "orders a responsible party to take action . . . [and] goes well beyond simply maintaining the status quo . . . ." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotations and citations omitted). In this context, the "status quo" refers to "the last, uncontested status which preceded the pending controversy." *Id.* Mandatory injunctions are particularly disfavored, and should not be granted "unless extreme or very serious damage will result . . . ." *Id.*

## ANALYSIS

To prevail, Plaintiffs must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. The Court addresses each of Plaintiffs' claims in turn.

### I.  Violations of California Civil Code § 2923.6

California Civil Code § 2923.6(c) reads as follows:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a

> trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Further, pursuant to § 2923.6(g), a mortgage servicer is obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification if "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application . . . ." Cal Civ. Code § 2923.6(g).

Plaintiffs contend that Defendants have violated the Homeowner's Bill of Rights ("HOBR"), California Civil Code § 2923.6, by: (1) failing to send a written notice identifying the specific reason for the denial of Plaintiffs' application for a first lien loan modification; (2) failing to evaluate Plaintiffs' application after Plaintiffs submitted a notice of material change in their financial circumstances; and (3) "dual tracking" a nonjudicial foreclosure sale while a first lien loan modification application was pending. (ECF No. 1-1 at 22-26.) The Court addresses each in turn.

*A.* **Written Notice**

Plaintiffs claim that Defendant's April 9, 2013 letter violates Civil Code § 2923.6(f) because it fails to adequately identify the reasons for denying Plaintiffs' request for a short sale. (ECF No. 4 at 21-23, ECF No. 4-4.) However, Civil Code § 2923.6(f) expressly applies to the denial of a "first lien loan modification," and not a short sale. Plaintiffs have provided no legal support for their conclusory assertions that a short sale is a lien loan modification under the HOBR. Accordingly, Plaintiffs have failed to establish a likelihood of success as to this claim.

### B.  *Material Change in Financial Circumstances*

On May 8, 2013, Plaintiffs' attorney sent Defendants a letter stating that "borrowers' routine expenses has increased." (ECF No. 4-6.) Plaintiffs contend that the letter constituted a notice of material change in their financial circumstances, and claim that Defendant failed to evaluate Plaintiffs' application pursuant to Civil Code § 2923.6(g). (ECF No. 4 at 20-21.)

The Court finds that Plaintiffs' barebones letter does not satisfy the requirements of § 2923.6(g), which requires the borrowers to "document" and "submit" a material change in circumstances. Cal. Civ. Code § 2923.6(g). Plaintiffs' letter is bereft of any details or documentation. To accept the letter as a valid notice of material change would be at odds with the very purpose of subsection (g), which is meant to relieve mortgage servicers from evaluating multiple loan modification applications submitted for the purpose of delay. *See Cal. Civ. Code* § 2923.6(g)

Further, California Civil Code § 2923.6(g) only obligates the mortgage servicer to evaluate subsequent applications from "borrowers who have already been evaluated or afforded a fair opportunity to be evaluated." Here, Plaintiffs do not allege that they submitted a subsequent lien loan modification after documenting their purported financial change. To the extent that Plaintiffs seem to suggest that Defendant was required to reevaluate Plaintiffs' original 2011 application, they have provided no legal support for this assertion. Accordingly, Plaintiffs have failed to establish a likelihood of success as to this claim.

### C.  *Dual Tracking*

California Civil Code § 2923.6 provides that, "if a borrower submits a complete application for a first lien loan modification . . . the mortgage servicer . . . shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). This statute prohibits the foreclosure process commonly referred to as

"dual tracking," which refers to the lender practice of negotiating with homeowners in default on their loans while simultaneously advancing the foreclosure process.

Plaintiffs claim that Defendants are proceeding with a nonjudicial foreclosure sale of the Property while Plaintiffs' first lien loan modification application is in review. (ECF No. 1-1 at 25.) Although the parties addressed this issue at the June 27, 2013 preliminary injunction hearing, the parties were unable to state whether or not Plaintiffs' 2011 application had ever been denied or if it was still pending. Accordingly, the Court ordered the parties to file supplemental briefing addressing this issue.

Defendant's supplemental briefing alleges that Plaintiffs were in bankruptcy proceedings from 2011 until 2013,[1] and that Defendant "does not entertain any loss mitigation options with borrowers who are in bankruptcy." Accordingly, Defendant allegedly "did not move forward with any additional loan modification review after the stay was lifted in Lee Ware's bankruptcy in February 2013 and after Irma Ware's bankruptcy was dismissed in June 2013 because [Plaintiffs'] financial documents from 2011 would have been outdated and the Wares previously declined a loan modification in or about March 2011." (ECF No. 18 at 4-5.)

The Court finds that Plaintiffs have demonstrated a likelihood of success as to their dual tracking claim against Defendant. Plaintiffs have clearly demonstrated that their 2011 first lien loan modification was still pending in 2013 at the time Defendants recorded a notice of trustee's sale in violation of California Civil Code § 2923.6(c). Although Defendant contends that "[t]here was no pending loan modification application in review prior to the filing of this Complaint," the fact remains that Defendant has never expressly denied Plaintiffs' 2011 loan modification application. (ECF No. 18 at 5.) Defendant has provided no factual

---

[1]Specifically, Defendant alleges that Plaintiff Lee Ware was in Chapter 13 Bankruptcy from July 5, 2011 to February 11, 2013. (ECF No. 18 at 4.) Plaintiff Irma Ware was also in bankruptcy from April 12, 2013 to April 30, 2013, and subsequently refiled for Chapter 13 Bankruptcy on May 14, 2013. Her case was dismissed on June 3, 2013.

1  support for its contention that the Wares previously declined a loan modification in
2  or about March 2011, and further failed to brief the Court on this issue despite the
3  grant of a continuance of the hearing to specifically address this issue. Accordingly,
4  Plaintiffs have established a likelihood of success as to this claim.

### D. Other HOBR Claims

After the June 27, 2013 preliminary injunction hearing, Plaintiffs allegedly filed a subsequent loan modification application which was summarily denied by Defendants on July 10, 2013. (ECF No. 20 at 4.) In their supplemental briefing, Plaintiffs raise additional claims against Defendant alleging further violations of the HOBR related to these later events. As these claims do not appear in Plaintiffs' original complaint and are not properly before the Court at this time, the Court declines to address these issues.

## II. Plaintiffs' Other Claims

The Court finds that Plaintiffs have failed to establish a likelihood of success as to any other claims. Plaintiffs other claims are unsupported by sufficient factual allegations, and Plaintiffs have not satisfied the requirements to assert a fraud claim against a corporation under California law. As to their negligence claim, Plaintiffs have failed to establish that Defendant exceeded its conventional role as a lender of money and thus owed Plaintiffs a legal duty. Finally, Plaintiffs have not established any fiduciary duties under which Defendant owed them a detailed accounting.

## CONCLUSION

As discussed above, Plaintiffs have established a likelihood of success as to their claim for a violation of Civil Code § 2923.6. Plaintiffs have further demonstrated that they will suffer "irreparable harm" from a foreclosure as they will be evicted from their home. The balance of equities also weighs in Plaintiffs' favor as an injunction would only delay Defendant's right to foreclose. Finally, an injunction is in the public's interest as it would enforce a recently enacted law designed to protect the public from unnecessary foreclosures.

1  Federal Rule of Civil Procedure 65(c) states "the court may issue a preliminary injunction order . . . only if the movant gives security in an amount that the court considers proper to pay costs and damages sustained by any party to have been wrongfully enjoined or restrained." The outstanding balance as of March 11, 2013, as noted on the Notice of Sale, was $397,993.85. (ECF No. 4-3.) Defendants contend that Plaintiffs should post a bond in the amount of $89,799.00, the sum of 10% interest on the outstanding balance and approximately $50,000.00 in attorneys' fees and costs. (ECF No. 5 at 25-26.) The Court finds that Defendant's approximation of its attorney's fees and costs is purely speculative, and orders Plaintiff to post a $39,799.00 bond within seven days of the filing of this Order.

For the reasons stated above, the Court **DISSOLVES** its June 13, 2013 Order, **GRANTS** Plaintiffs' request for a preliminary injunction and **FURTHER ORDERS** Plaintiffs to pay a $39,799.00 bond within seven days of the docketing of this Order. Defendant is enjoined from taking any steps to deprive Plaintiffs of their residence in and possession of the property located at 8248 Rockview Drive, El Cajon, California.

**IT IS SO ORDERED**.

DATED: August 16, 2013

Honorable Janis L. Sammartino
United States District Judge